**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**STEVEN B. AUBREY and BRIAN E. VODICKA,**
**Plaintiffs,**

-vs-                                                                         Case No.  A-10-CA-076-SS

**PETER E. BARLIN, GREGORY H. LAHR,
SANDRA F. GUNN, MARK E. SCHIFFGENS,
MITCHELL D. SAVRICK, and SAVRICK
SCHUMANN JOHNSON McGARR KAMINSKI
& SHIRLEY, LLP,**
**Defendants.**

_____

**O R D E R**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and

specifically Defendants Mitchell Savrick and Savrick Schumann Johnson McGarr Kaminski &

Shirley, LLP. ("Savrick Defendants")'s Motion to Dismiss [#66], Plaintiffs Steven Aubrey and Brian

Vodicka ("Plaintiffs")'s response [#74] thereto, and the Savrick Defendants' reply [#78]; Defendants

Sandra Gunn and Mark Schiffgens ("Gunn and Schiffgens")' Motion to Dismiss [#69] and Plaintiffs'

response [#75] thereto; Defendant Gregory Lahr ("Lahr")'s Motion to Dismiss [#72] and Plaintiffs'

response [#77] thereto; and Defendant Peter Barlin ("Barlin")'s Motion to Dismiss [#73] and

Plaintiffs' response [#76] thereto.  Having considered the motions, the case file as a whole, and the

relevant law, the Court enters the following opinion and order.

**Background**

This suit arises out of financial losses Plaintiffs allegedly suffered as a result of three real-

estate investments: the "Temple Loan," the "Manor Loan," and the "Long Beach Loan."  Am.

Compl. [#63] at 3.  Plaintiffs claim Defendants, in various capacities, "created, packaged, marketed, and sold a series of real estate-backed investments," including these three loans, "as part of a Ponzi scheme."  *Id.* at 2.  Plaintiffs allege losses of over $1,000,000 on the three investments, which they claim were fraudulently-induced.  Plaintiffs make seven claims in their complaint: (1) violations of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5; (2) violations of the Texas Securities Act; (3) violations of Chapter 27 of the Texas Business and Commerce Code; (4) common law fraud and fraudulent inducement; (5) negligent misrepresentation; (6) breach of fiduciary duty; and (7) legal malpractice against the Savrick Defendants.  *Id.* at 4–37.

All Defendants have filed motions asking the Court to dismiss Plaintiffs' federal law claims and to decline the exercise of supplemental jurisdiction over Plaintiffs' state law claims. For the following reasons, the Savrick Defendants' Motion to Dismiss is GRANTED; Gunn and Schiffgens' Motion to Dismiss is GRANTED; Lahr's Motion to Dismiss is DENIED; and Barlin's Motion to Dismiss is GRANTED.  The Court grants leave for Plaintiffs to amend their complaint.

## Legal Standards

### 1.      12(b)(6) Motion to Dismiss

In deciding a motion to dismiss, a court must accept as true all factual allegations contained within the complaint.  *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).  Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations."  *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  The

plaintiff must plead sufficient facts to state a claim for relief that is facially plausible.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully.  *Id.*   Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and common sense."  *Id.* at 1950.

**2.      § 10(b) Pleading Requirements**

§10(b) of the 1934 Securities Exchange Act empowers the Securities Exchange Commission ("SEC") to promulgate rules to prevent manipulative or deceptive practices in the sale or purchase of securities.  15 U.S.C. 78j(b).  Under this grant of authority, the SEC issued Rule 10b-5 which makes it unlawful:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

The Fifth Circuit has held the elements of a claim under § 10(b) are: (1) a misrepresentation or omission; (2) of a material fact; (3) in connection with the purchase or sale

of a security; (4) scienter by the defendant; (5) justifiable reliance by the plaintiff; (6) damages; and (7) proximate cause. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003). To establish scienter, a plaintiff must show the defendant intended to deceive, defraud, or manipulate, or that the defendant acted with severe recklessness. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009). Severe recklessness is limited to "highly unreasonable omissions or misrepresentations" that involve an "extreme departure from the standards of ordinary care." *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 408 (5th Cir. 2001).

Both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA") impose a heightened pleading requirement on §10(b) claims. FED. R. CIV. P. 9(b); 15 U.S.C. § 78u-4(b). FRCP 9(b) requires plaintiffs alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The PSLRA dictates a more rigorous pleading standard for private securities fraud actions in two ways: First, in any such action alleging the defendant made an untrue statement of material fact or a misleading omission:

> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

Second, for claims under which the plaintiff must prove a particular state of mind to recover:

> the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b) (emphasis added). Based on the elements of a §10(b) claim described above, it is clear that §10(b) claims are subject to both of these requirements of the PSLRA.

-4-

3.      **Motions to Dismiss §10(b) Claims**

Because of the heightened pleading requirements of FRCP 9(b) and the PSLRA, motions

to dismiss §10(b) claims are handled differently than most 12(b)(6) motions to dismiss.

Specifically, the Supreme Court and Fifth Circuit have developed analytical frameworks for both

the heightened particularity requirement and the requirement that a complaint give rise to a

"strong inference" of scienter.

a.      **Particularity Requirement**

The Fifth Circuit has stated that to avoid dismissal under FRCP 9(b) and the PSLRA for

lack of particularity, the plaintiff must:

> (1) specify each statement alleged to have been misleading, *i.e.,* contended to be fraudulent;
>
> (2) identify the speaker;
>
> (3) state when and where the statement was made;
>
> (4) plead with particularity the contents of the false representations;
>
> (5) plead with particularity what the person making the misrepresentation obtained thereby; and
>
> (6) explain the reason or reasons why the statement is misleading, *i.e.,* why the statement is fraudulent.

*Rosenzweig*, 332 F.3d at 866.

b.      **"Strong Inference" of Scienter Requirement**

The Supreme Court has outlined a framework for courts to use in analyzing motions to

dismiss § 10(b) complaints for failing to establish a "strong inference" of scienter: First, as in any

other motion to dismiss, the court accepts all factual allegations in the complaint as true; second,

courts must consider the entire complaint, other sources typically examined in a 12(b)(6) motion, sources incorporated by reference into the complaint, and matters of which a court may take judicial notice; third, in determining whether the pleaded facts give rise to a "strong" inference of scienter, as required by the PSLRA, a court should consider all of the facts alleged, taken collectively, and should also take into account plausible opposing inferences. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).  The inference need not be irrefutable, nor even the most compelling of all competing inferences, but must be strong in light of other inferences.  *Id.* at 324.  Ultimately, a complaint will only survive if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.*

**c.      Summary**

The Supreme Court's decisions in *Twombly* and *Iqbal* impose a plausibility requirement on all complaints.  Thus, to survive Defendants' motions to dismiss the § 10(b) claims in this case, Plaintiffs' complaint must allege facts sufficient for the Court to find it plausible that each Defendant: (1) made a misrepresentation or omission; (2) of a material fact; (3) in connection with the purchase or sale of a security; (4) that such misrepresentation or omission was made with scienter by that Defendant; (5) that Plaintiff justifiably relied on the misrepresentation or omission; (6) that Plaintiff suffered damages; and (7) that Defendant's misrepresentation or omission was the proximate cause of Plaintiff's loss.  *Rosenzweig*, 332 F.3d at 865.

Moreover, to survive Defendants' motions to dismiss, FRCP 9(b) and the PSLRA require the Plaintiffs to: (1) specify each statement alleged to have been misleading or fraudulent; (2) identify the speaker; (3) state where and when the statement was made; (4) plead with

particularity the contents of the false misrepresentation; (5) plead with particularity what the person making the misrepresentation obtained thereby; and (6) explain the reason or reasons the statement is misleading or fraudulent.  *Id.* at 866.

Finally, with respect to scienter, to survive Defendants' motions to dismiss, Plaintiffs must plead facts sufficient to create a "strong inference" that each Defendant intended to deceive, defraud, or manipulate, or that the Defendant acted with severe recklessness.  15 U.S.C. § 78u-4(b); *Lormand*, 565 F.3d at 251.  In assessing whether Plaintiffs have created such an inference, the Court will look at the complaint as a whole, all relevant information from other appropriate sources, and will consider plausible opposing inferences.  *Tellabs*, 551 U.S. at 322–23.  The Court will then ask whether "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* at 324.

### Analysis

**1.      Savrick Defendants' Motion to Dismiss [#66]**

**a.      § 10(b) and Rule 10b-5 Claims**

For the following reasons, the Court DISMISSES all of Plaintiffs' claims against the Savrick Defendants.

The Savrick Defendants argue Plaintiffs' § 10(b) claim against them fails for three reasons: The first and primary reason is because Plaintiffs' complaint attributes no misrepresentations or omissions to the Savrick Defendants.  The second and third ancillary reasons are because Plaintiffs necessarily fail to plead reliance on such statements, nor scienter in making them.  The Court agrees.

The Plaintiffs' First Amended Complaint ("Am. Compl.") [#63] contains many allegations regarding the Temple Loan, the Manor Loan, and the Long Beach Loan.  However, Plaintiffs' § 10(b) claims only refer to the Savrick Defendants in paragraphs 21, 115, 116, and 119.  Am. Compl. at 4, 28–29.  The first of these references is simply a conclusory allegation that the Savrick Defendants, along with every other Defendant, "created, packaged, marketed, and sold a series of real-estate backed investments as part of a Ponzi scheme."  Am. Compl. at 4.  As noted above, however, such conclusory statements are insufficient to survive a motion to dismiss. *Tuchman*, 14 F.3d at 1067.  The latter three references are allegations that Defendant Lahr misrepresented to Plaintiffs that the Savrick Defendants would be "reviewing, preparing, and obtaining all documents necessary for the Manor Loan investment . . . including a title insurance policy," that the Savrick Defendants did not in fact obtain title insurance, and that Defendant Lahr was aware of this.  Am. Compl. at 28.  However, Plaintiffs do not allege the Savrick Defendants made any misrepresentations or omissions; rather, this is an allegation about a specific misrepresentation made by Defendant Lahr regarding the Savrick Defendants.  These allegations do not provide a basis for a §10(b) claim against the Savrick Defendants because they lack an essential element, namely a misrepresentation or omission.  Because the remaining elements of a § 10(b) claim assume the existence of a misrepresentation or omission, they are likewise lacking against the Savrick Defendants.  Finally, there is no aider and abettor liability under private § 10(b) or Rule 10b-5 claims. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994).  Consequently, the Savrick Defendants cannot be held secondarily liable for the primary conduct of Defendant Lahr.

Plaintiffs argue in their Response that they base their claims on Rules 10b-5(a) and 10b-5(c), neither of which require misrepresentations or omissions.  Rather, they suggest their claims are that the Savrick Defendants employed a "device, scheme, or artifice to defraud," as prohibited by 10b-5(a); and that the Savrick Defendants engaged in an "act, practice, or course of business which operate[d] . . . as a fraud or deceit," in connection with the sale or purchase of a security, as prohibited by 10b-5(c).   However, they argue, the particularity requirements of the PSLRA only apply in limited circumstances:

> In any private action arising under this chapter in which the plaintiff alleges that the defendant--
> (A) made an untrue statement of a material fact; or
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading

15 U.S.C. § 78u-4(b)(1).  Therefore, Plaintiffs conclude the particularity requirements of the PSLRA do not apply to their claims.  Indeed, Plaintiffs argue there is no articulated pleading standard for claims under Rules 10b-5(a) and 10b-5(c); thus, it is impossible for them to have fallen short of such a standard.  Plaintiffs' argument fails.

Although the Court acknowledges the text of 15 U.S.C. § 78u-4(b)(1) imposes a limit on the scope of the PSLRA particularity requirement, the Federal Rules of Civil Procedure and Fifth Circuit precedent make the limit irrelevant here.  The text of 10b-5(a) and 10b-5(c) indicates they both prohibit fraudulent conduct.  Federal Rule of Civil Procedure 9(b) requires: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  In the Fifth Circuit, the PSLRA particularity requirement is borrowed from the particularity requirement of FRCP 9(b): "The PSLRA's particularity

requirement incorporates, at a minimum, the pleading standard for fraud actions under Federal Rule of Civil Procedure 9(b)." *Rosenzweig*, 332 F.3d at 866. "Pleading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir.1994)). Thus, although the PSLRA may except Rule 10b-5(a) and (c) claims from a higher, as-yet-unarticulated pleading standard,[1] Federal Rule of Civil Procedure 9(b) certainly imposes the heightened particularity requirement for fraud upon them.

Plaintiffs' pleadings lack the required particularity, regardless of the Rule 10b-5 section on which their claims are based. As noted above, Plaintiffs ascribe no fraudulent conduct to the Savrick Defendants other than the conclusory statement contained in Paragraph 21 of Plaintiffs' Amended Complaint. Whether Plaintiffs are alleging fraud through conduct, statements, or omissions, these factual pleadings are not sufficient. As the Fifth Circuit explains, the heightened pleading requirement of Federal Rule 9(b) plays a "screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). The Court's Order [#61] of April 28, 2010 specified the pleading requirements for a § 10(b) claim; Plaintiffs have not met, or even substantially approached, these requirements in their allegations against the Savrick Defendants. Specifically, the Court finds Plaintiffs' § 10(b) allegations against the Savrick Defendants fail the plausibility requirement of *Twombly* and *Iqbal*; the particularity requirement

---

[1] The Court takes no position on this question here.

of Federal Rule 9(b) and, to the extent it applies, the PSLRA; and the "strong inference" of

scienter requirement of the PSLRA.[2]

Consequently, Plaintiffs' §10(b) and Rule 10b-5 claims against the Savrick Defendants

are DISMISSED.  The Court grants leave to amend if Plaintiffs can make good faith allegations

within the pleading requirements articulated above.

**b.     State Law Claims**

Having dismissed Plaintiffs' federal claims against the Savrick Defendants, the Court

now turns to Plaintiff Vodicka's state law legal malpractice claim against the Savrick

Defendants.[3]  28 U.S.C. § 1367(c)(3) gives this Court discretion to retain or decline jurisdiction

over the state law claims against the Savrick Defendants, even though all federal claims against

them have been dismissed.  Although "neither mandatory nor absolute," the "general rule is that

a court should decline to exercise jurisdiction over remaining state-law claims when all

federal-law claims are eliminated before trial."  *Brookshire Bros. Holding, Inc. v. Dayco Prods.,*

*Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).  In making a decision whether to retain or decline

supplemental jurisdiction over state law claims, a court should be "guided by the statutory factors

---

[2] Both Plaintiffs and the Savrick Defendants cite to the Supreme Court's decision in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008), the former for the notion that conduct can be deceptive, and the latter for the proposition that reliance is an essential element of a private § 10(b) claim.  The Court finds neither of these insights controlling here.  Both also cite to the Southern District of New York's opinion in *In re Initial Pub. Offering Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003): Plaintiffs offer the case to show that one court has articulated a different test for claims based on market manipulation rather than misrepresentations or omissions; the Savrick Defendants cite to the case to show that the court retained the traditional "strong inference" of scienter requirement for claims based on Rules 10b-5(a) and (c).  The Savrick Defendants further cite to other non-Fifth Circuit cases that articulate the elements of 10b-5(a) and (c) claims.  *See, e.g.*, *In re Alstom SA*, 406 F. Supp.2d 433 (S.D.N.Y. 2005).  The Court acknowledges a different pleading standard may be appropriate in some cases; however, Plaintiffs' threadbare §10 (b) allegations against the Savrick Defendants makes it unnecessary to adopt or articulate such a standard in this case.

[3] Plaintiffs' complaint indicates Plaintiff Aubrey's legal malpractice claim against the Savrick Defendants is currently being pursued in state court.

set forth in section 1367(c) as well as the common law factors of judicial economy, convenience, fairness, and comity." *Id.* Here, none of the factors indicate a departure from the general rule is appropriate. Indeed, judicial economy cuts against retaining supplemental jurisdiction over a state law claim brought by one of two Plaintiffs against two of six Defendants, especially when the other Plaintiff is himself pursuing the claim in state court. Therefore, Plaintiff Vodicka's state law claim for legal malpractice against the Savrick Defendants is DISMISSED.

## 2.     Gunn and Schiffgens' Motion To Dismiss [#69]

### a.     § 10(b) and Rule 10b-5 Claims

Gunn and Schiffgens challenge Plaintiffs' complaint on much the same grounds as the Savrick Defendants. Specifically, Gunn and Schiffgens argue Plaintiffs do not attribute any misrepresentations or omissions to them; Plaintiffs fail to allege reliance; and Plaintiffs fail to allege scienter. The Court agrees.

With respect to Plaintiffs' background facts and § 10(b) claims, Defendant Gunn is mentioned in Paragraphs 12, 13, 14, 21, footnote 5 in Paragraph 81, and 119. Defendant Schiffgens is mentioned only in Paragraphs 12, 13, 14, and 21. Paragraph 12 makes the conclusory statement that Gunn and Schiffgens, along with other Defendants, and doing business as Creative Financial Solutions and Creative Lending Concepts, LLC, were involved in a Ponzi scheme. As stated above, a conclusory statement such as this is not sufficient to survive a motion to dismiss. Paragraph 13 alleges that Defendant Gunn was an investor in a company called Capital Advantage, allegedly also part of the Ponzi scheme; it further alleges Schiffgens borrowed money from this company. Paragraph 14 alleges Gunn later formed Creative Financial and Schiffgens later formed Creative Lending. Paragraph 21 contains essentially the same

conclusory statement as Paragraph 12, that Gunn and Schiffgens were involved, along with the other Defendants, in a Ponzi scheme.  Footnote 5, included in Paragraph 81, alleges Defendant Gunn received money for book-keeping services provided to Creative Financial.  Finally, Finally, Paragraph 119 alleges Defendant Gunn executed a consent lien for a senior lienholder of the Manor Loan investment.

Plaintiffs do not allege any misrepresentations or omissions made by Gunn and Schiffgens, nor any affirmative deceptive conduct by them.  Plaintiffs do not allege they relied on any misrepresentations, omissions, or deceptive conduct by Gunn and Schiffgens.  Plaintiffs fail to allege Gunn and Schiffgens acted intentionally or with severe recklessness.  The Court notes again there is no aider and abetter liability for private § 10(b) claims.  In short, Plaintiffs' complaint against Gunn and Schiffgens fails for the same reasons their complaint against the Savrick Defendants fail.

Plaintiffs also make the same arguments in reply, asserting that their claims fall under Rules 10b-5(a) and (c).  However, as discussed above, no matter what test the Court might reasonably employ to determine the sufficiency of Rule 10b-5(a) or (c) pleadings, Plaintiffs' complaint against Gunn and Schiffgens falls short.  Specifically, Plaintiffs' complaint fails the plausibility requirement of *Twombly* and *Iqbal*; the particularity requirement of Federal Rule of Civil Procedure 9(b) and the PSLRA; and the "strong inference" of scienter requirement of the PSLRA.

Plaintiffs further claim Gunn and Schiffgens have "control person" liability under 15 U.S.C. § 78t.  That section states:

(a) Joint and several liability; good faith defense
Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

(b) Unlawful activity through or by means of any other person
It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person.

15 U.S.C. § 78t.  Although Plaintiffs state it in their reply brief, Plaintiffs do not allege in their complaint that Gunn and Schiffgens had control over Lahr or Barlin, or acted through them. Indeed, in Paragraphs 152 and 153, Plaintiffs allege Defendants Lahr, Gunn, and Schiffgens all had an equal right to direct and control their joint enterprise.  Plaintiffs' conclusory statements in their reply brief are not sufficient to survive a motion to dismiss.  Plaintiffs' § 10(b) claims against Gunn and Schiffgens are DISMISSED.  The Court again grants leave to amend if Plaintiffs can make good faith allegations against Gunn and Schiffgens sufficient to state a valid § 10(b) claim.

**b.    State Law Claims**

Again, 28 U.S.C. § 1367(c)(3) gives this Court discretion to retain or decline jurisdiction over the state law claims against Gunn and Schiffgens.  The Court adheres to the general rule and opts to decline jurisdiction over these claims in the absence of a valid federal claim.  Plaintiffs' state law claims against Gunn and Schiffgens are DISMISSED.

-14-

**3.       Defendant Lahr's Motion to Dismiss**

**a.       § 10(b) and Rule 10b-5 Claims**

Lahr argues Plaintiffs' complaint is deficient for two reasons: first, because they did not sufficiently plead scienter; and second, because they did not sufficiently allege that Lahr's misstatements or omissions caused their financial loss.  The Court disagrees.

**i.       Scienter**

As noted above, a § 10(b) or Rule 10b-5 claim requires a plaintiff to plead scienter. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003).  Revisiting the standards articulated above: To establish scienter, a plaintiff must show the defendant intended to deceive, defraud, or manipulate, or that the defendant acted with severe recklessness.  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009).  Severe recklessness is limited to "highly unreasonable omissions or misrepresentations" that involve an "extreme departure from the standards of ordinary care."  *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 408 (5th Cir. 2001).  Moreover, the PSLRA requires a Plaintiff to allege with particularity facts giving rise to a "strong inference" of scienter.  Thus, a complaint will only survive a motion to dismiss if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

**A.       The Temple Loan**

Plaintiffs allege they invested $120,000 in two transactions relating to the Temple Loan investment: (1) $70,000 on June 5, 2006; and (2) $50,000 on June 9, 2006.  Plaintiffs allegedly made these investments because Lahr represented to them that the investments were "fully

secured by a completely renovated apartment complex that was ready for immediate leasing and was income-producing."  Am. Compl. at ¶ 24.  Moreover, Plaintiffs allege Lahr told them the money from their investment would be used to renovate and improve the collateral.  *Id.* at ¶ 31. Finally, Plaintiffs allege Lahr represented the value of the collateral as $465,000.  *Id.* at ¶ 38. Plaintiffs complain Lahr failed to disclose four things: (1) the collateral was actually vacant and in disrepair; (2) the collateral did not have a certificate of occupancy, so the borrower had no ability to generate revenue to repay Plaintiffs; (3) the money from Plaintiffs' investment was in fact used to pay off Lahr's investors on unrelated investments; and (4) the collateral was in fact worth only $135,000.  *Id.* at ¶¶ 24, 31, 38.  Plaintiffs allege Lahr knew these representations were false because Lahr had actual knowledge based on: his physical observations of the collateral; conversations with the borrower; the fact that Lahr directed the distribution of the investment proceeds; and his review of the appraisal of the collateral.  *Id.* at ¶¶ 28, 35, 42.  Moreover, Plaintiffs allege Lahr gained tens of thousands of dollars in commissions;  avoided a significant loss by unloading his personal investment in the collateral to Plaintiffs; and was able to perpetuate his Ponzi scheme by distributing money to other investors.  *Id.* at ¶¶ 27, 34, 41. Consequently, Plaintiffs argue, there is a strong inference that Lahr either intended to deceive them or was severely reckless in doing so.  The Court agrees.

Lahr argues Plaintiffs' allegations regarding the investment proceeds are insufficient to give rise to a strong inference of scienter.  Specifically, Lahr contends Plaintiffs are attempting to "mislead the Court" because they would "have this Court believe that Lahr rather than the borrower determined where the proceeds would go."  Defendant Lahr's Motion to Dismiss ("Lahr Mot. Dism.") [#72] at 4.  However, for the purposes of a motion to dismiss, the Court

-16-

must accept all well-pleaded facts as true.  Lahr will have the opportunity to challenge Plaintiffs'
factual allegations in a motion to summary judgment or at trial, but this argument is unavailing in
the context of a motion to dismiss.  Thus, the Court rejects it.

Lahr further argues Plaintiffs remaining pleadings are insufficient because Plaintiffs
failed to plead the exact timing of Lahr's observation of the collateral, his conversation with the
borrower, and his review of the appraisal.  Lahr asserts that "Plaintiffs wish for the Court to draw
the conclusion that these alleged observations and discussions occurred prior to the Plaintiffs
second lien loan but conclusions are not sufficient to meet the pleading requirements for scienter
under the PSLRA."  *Id.*  Lahr makes a similar argument with respect to the timing of the alleged
appraisal.  Lahr's argument lacks merit.

In securities fraud suits, the heightened pleading standard "provides defendants with fair
notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill,
reduces the number of strike suits, and prevents plaintiffs from filing baseless claims and then
attempting to discover unknown wrongs."  *Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061,
1067 (5th Cir. 1994).  As noted above, "[t]he inquiry is whether all of the facts alleged, taken
collectively, give rise to a strong plausible inference of scienter."  *Lormand v. US Unwired, Inc.*,
565 F.3d 228, 251 (5th Cir. 2009).  Moreover, "[a]llegations of circumstantial evidence justifying
a strong inference of scienter will suffice."  *Id.* (internal quotation omitted).  Lahr erroneously
attempts to import the stringent particularity requirement of the PSLRA, which applies to a
defendant's alleged misrepresentations or omissions, to the PSLRA's separate scienter
requirement.  Finally, this Court is mindful of the Supreme Court's directive that, in determining
the overall plausibility of a complaint, courts should be guided by their "judicial experience and

common sense." *Iqbal*, 129 S. Ct. at 1950.  Plaintiffs' pleadings state with particularity where and when Lahr made the alleged misrepresentations and omissions.  Moreover, the plain text of the complaint clearly includes the implicit allegation that Lahr knew of these facts prior to his meeting with Plaintiffs.  Plaintiffs pleadings must give Lahr fair notice and protect him from baseless claims; they need not—and should not—contain a recital of every conceivable detail.  Omission of details is particularly appropriate where, as here, there is only one reasonable interpretation of Plaintiffs' factual allegations.

Here, Plaintiffs have alleged Lahr made false statements to them about the condition and value of the collateral, the ability of the borrower to repay, and the distribution of the investment proceeds; that Lahr knew these statements were false because of personal observation and information from the borrower; and that Lahr made a great deal of money as a result of these false statements.  Facts that demonstrate a motive to commit securities fraud can be sufficient to create a strong inference of scienter.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).  The Court finds Plaintiffs have alleged facts giving rise to a strong inference of scienter.

A court is also required to consider plausible opposing inferences that could be drawn from the facts alleged.  *Tellabs*, 551 U.S. at 324.  The only other inference the Court finds remotely plausible is that Lahr was so careless and forgetful that he failed to make the relevant disclosures at the time of the meetings and similarly failed to correct the misrepresentations in a timely fashion after the meetings.  The Court finds this inference weak.  The Court concludes that a reasonable person, considering the alleged facts collectively, would find the inference that Lahr intended to deceive, defraud, or manipulate Plaintiffs, or acted with severe recklessness in

-18-

doing so, "cogent and at least as compelling as any opposing inference one could draw" from the facts. *Id.* Consequently, the Court finds Plaintiffs have sufficiently pleaded scienter with respect to Lahr and the Temple Loan. Therefore, Lahr's motion to dismiss on this claim for lack of scienter is DENIED.

**B.    The Manor Loan**

Plaintiffs allege many misrepresentations and omissions regarding the Manor Loan. Thus, the Court will only address those necessary to resolve Lahr's arguments. Plaintiffs allege they invested $915,000 in the Manor Loan. Am. Compl. at ¶ 50. Plaintiffs also allege Lahr claimed to have borrowed $996,000 from Defendant Barlin, which Lahr then invested in the Manor Loan. Plaintiffs further allege Lahr and Barlin were able to avoid a "direct or derivative" loss of this $996,000 because of Plaintiffs' investment. Am. Compl. at ¶ 49.

Lahr argues, "Plaintiffs do not plead a relationship between the loan they made and Lahr's avoidance of a potential loss." Lahr Mot. Dism. at 6. While the Court acknowledges Plaintiffs' pleadings are not as clear as might be wished, Plaintiffs do specifically state that one of the benefits obtained by Lahr was "selling to Plaintiffs his personal purported $1.2 million (actually $996,000.00) position in the Manor Loan that he no longer believed was viable." Am. Compl. at ¶ 55. This statement, in combination with many other, less clear, references to the $996,000 avoidance, is a sufficiently-pleaded relationship between Plaintiffs' loan and Lahr's alleged benefit. Thus, the Court rejects Lahr's first argument.

Lahr next argues his personal investment of $996,000 into the Manor project "completely negates any possible inference of scienter." Lahr Mot. Dism. at 7. Lahr notes that Plaintiffs' amended complaint reflects they made two separate loans with respect to the Manor project:

$415,000 on January 30, 2007 and an additional $500,000 on June 21, 2007.  *Id.* at 6; Am.

Compl. at ¶ 16.  Lahr refers to Plaintiffs' original complaint in stating that the $415,000 loan was

made contemporaneously with Lahr's $996,000 investment.  Lahr Mot. Dism. at 7.

Consequently, Lahr argues, he cannot be said to have avoided any loss because of Plaintiffs'

investment, and no inference of scienter can be drawn.  *Id.*  This argument is unconvincing.

One plausible inference to be drawn from Lahr's argument is the one Lahr presumably

urges this Court to adopt: that he had full confidence in the project and was simply mistaken or

negligent regarding his numerous misrepresentations.[4]  Lahr invested a great deal of his personal

funds, and the losses sustained were simply the result of a failed investment for all involved.

Another plausible inference is that Lahr made these misrepresentations with the intent to

deceive Plaintiffs, or that he acted with severe recklessness in doing so.  He "fronted" some

money for the project to demonstrate confidence and induce outside investors, knowing that he

could use money from later investors to pay off his initial investment.  Indeed, Plaintiffs' initial

complaint suggests this is exactly what happened: in June, 2007, according to Plaintiffs, "Lahr

and Barlin suggested that Plaintiffs should buy a part of Lahr's interest in the loan. . . . Lahr and

Barlin asked Plaintiffs to make the check payable to Barlin.  They stated that it would be more

efficient that way, because Lahr owed money to Barlin."  Pl.'s Orig. Compl. [#1] at ¶ 65.  Thus,

Plaintiffs allege their subsequent $500,000 investment directly offset Lahr and Barlin's

investment in the Manor project.  According to Plaintiffs, they would not have made either the

---

[4] Plaintiffs allege eleven separate misrepresentations and omissions, including a representation that the collateral was worth $49 million dollars when it was in fact worth only $12.8 million, and failure to disclose that the borrower did not in fact own a substantial portion of the collateral.

$415,000 or the $500,000 investment absent Lahr's misrepresentations and omissions.  Plaintiffs

further allege Lahr stood to gain commissions from the sale as well as brokerage fees.

Given the extent and serious nature of the misrepresentations and omissions alleged by

Plaintiffs, and the benefits Lahr allegedly obtained, the Court finds this latter inference at least as

likely as any other.  Consequently, the Court concludes Plaintiffs have sufficiently alleged

scienter against Lahr with respect to the Manor Loan, and Lahr's motion to dismiss this claim for

lack of scienter is therefore DENIED.

## C.     The Long Beach Loan

Plaintiffs allege Lahr made a single misrepresentation in connection with the Long Beach

Loan.  Specifically, Plaintiffs allege Lahr represented their full $140,000 investment would be

used to renovate the collateral, but that only $20,000 was used to do so.  All of Plaintiffs'

allegations regarding scienter are made "upon information and belief."  Although Lahr points out

the PSLRA requires, "if an allegation regarding [a] statement or omission is made on information

and belief, the complaint shall state with particularity all facts on which that belief is formed,"

the Court is not convinced this is relevant.  15 U.S.C. § 78u-4(b)(1).  However, Plaintiffs are not

alleging Lahr's misrepresentations and omissions "upon information and belief"; rather,

Plaintiffs are alleging scienter upon information and belief.  But the PLSRA also requires that a

plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted

with the required state of mind."  *Id.* § 78u-4(b)(2).  Plaintiffs have failed to provide any details

regarding the source of their information and belief.  Certainly, they cannot be said to have stated

any facts regarding Lahr's scienter "with particularity."  Therefore, Plaintiffs' claim against Lahr

with respect to the Long Beach Loan does not properly plead scienter and must be dismissed.

Plaintiffs § 10(b) claims relating to Lahr and the Long Beach Loan are DISMISSED; as before, Plaintiffs may amend if they can plead sufficient allegations in good faith.

## ii.     Loss Causation

Lahr argues Plaintiffs have failed to sufficiently plead loss causation with respect to any of the loans.  Indeed, Plaintiffs' amended complaint simply contains conclusory statements that Plaintiffs suffered losses "as a proximate result" of Lahr's misrepresentations and omissions. Although Plaintiffs are correct in stating proximate causation is not subject to heightened pleading standards, the Fifth Circuit has held that Federal Rule of Civil Procedure 8(a)(2) "requires the plaintiff to allege, in respect to loss causation, a facially 'plausible' causal relationship between the fraudulent statements or omissions and plaintiff's economic loss." *Lormand*, 565 F.3d at 258.  Plaintiffs and Lahr seem to agree that Plaintiffs are proceeding under a "materialization of the risk" theory of causation.  Under this theory, a "misstatement or omission is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk *concealed* by the misrepresentations and omissions alleged by a disappointed investor."  *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2nd Cir. 2005).  The conclusory statements contained within Plaintiffs' amended complaint cannot even meet the relaxed pleading standards required by *Twombly* and *Iqbal* under Federal Rule 8(a)(2).

However, Plaintiffs appear to have anticipated this problem.  Rather than including loss causation allegations in their complaint, they incorporate them by reference from another pleading.  *See* Am. Compl. at ¶ 30 n.3 (incorporating loss causation allegations from Plaintiffs' Reponse to Lahr's Motion to Dismiss [#53]).  The Court does not look favorably upon Plaintiffs' failure to include these allegations in their amended complaint, despite the Court's Order to do

so.  The Court has a very busy docket and cannot be expected to engage in a scavenger hunt across Plaintiffs' various filings, seeking the elements of a valid legal claim.  However, because ordering the Plaintiffs to amend this claim would only waste more time—and may once again prove fruitless—the Court takes notice of paragraphs 20–24 of Plaintiffs' Response to Lahr's Motion to Dismiss [#53].  The relevant text of paragraph 24 is:

> Here, Lahr concealed many risks attendant to the investments, such as: (l) the true identity and strength of the borrowers; (2) loan-to-value ratio of the collateral was actually negative; (3) the investment funds would not be used to improve the collateral; and (4) the borrower did not own the collateral and could not pledge the collateral. Plaintiffs' investments lost money when these concealed risks materialized. The borrowers had no operations to repay the investments, and the collateral either did not exist or was grossly insufficient to secure the investments.

Pl. Resp. Lahr Mot. Dism. [#53] at ¶ 24.

The Court finds these allegations sufficient to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  Lahr's arguments to the contrary are factual disputes over the "actual" cause of the losses; thus, they are not appropriate in the context of a motion to dismiss, in which we must take all of Plaintiffs' well-pleaded facts as true.  The Court has already dismissed Plaintiffs' claims against Lahr with respect to the Long Beach Loan because they did not properly plead scienter.  These allegations cover both the Temple Loan and the Manor Loan.  Consequently, Lahr's motion to dismiss Plaintiffs' § 10(b) claims regarding the Temple Loan and the Manor Loan is DENIED.

### iii.    Summary

For the foregoing reasons, Lahr's motion to dismiss Plaintiffs' §10 (b) and Rule 10b-5 claims regarding the Long Beach Loan is GRANTED; therefore, Plaintiffs' §10 (b) and Rule 10b-5 claims against Lahr regarding the Long Beach Loan are DISMISSED.  Lahr's motion to dismiss is DENIED

with respect to Plaintiffs' § 10(b) and Rule 10b-5 claims regarding the Temple Loan and the Manor Loan.

**b.      State Law Claims**

Because the Court has denied Lahr's motion to dismiss some of Plaintiffs' federal law claims, and because Plaintiffs' state law claims are based upon the same conduct, the Court chooses to retain supplemental jurisdiction over Plaintiffs' state law claims against Lahr.  Accordingly, Lahr's motion to dismiss Plaintiffs' state law claims is DENIED.

**4.      Defendant Barlin's Motion to Dismiss**

**a.      § 10(b) and Rule 10b-5 Claims**

Barlin also challenges Plaintiffs' claims for lack of sufficiently pleaded scienter and loss causation.  Barlin further challenges Plaintiffs' claims because the alleged misrepresentations or omissions were not material.  Because Plaintiffs have failed to plead loss causation with respect to Barlin, the Court GRANTS Barlin's motion to dismiss.

Plaintiffs make three claims against Barlin: he failed to disclose to Plaintiffs that Vitaly Zaretsky and Jeff Turner were "straw-men and/or not controlling principals," in the Manor Loan, as claimed by Defendant Lahr (which claim Barlin colorfully labels the "Straw-Man Allegations"); that Barlin represented to Plaintiff Vodicka that the borrower in the Manor Loan owned all of the collateral, when in fact this was not the case (the "Collateral Ownership Allegations"); and that he represented to Plaintiffs that the 414-acre tract used as collateral in the Manor Loan was worth $49 million, when in fact it was only worth $12.8 million (the "Collateral Value Allegations"). Defendant Barlin's Motion to Dismiss ("Barlin Mot. Dism.") [#73] at 2; Am. Compl. at ¶¶ 45–51, 59–65, 66-72.

Barlin claims Plaintiffs' do not allege sufficient facts to give rise to a strong inference of scienter.  The Court disagrees.  With respect to the Straw-Man Allegations, Plaintiffs allege Barlin had actual knowledge that his representations were false based on documents, actual knowledge of who the real prinicpals were, and that Mr. Turner's name was added to lend credibility to the investment.[5]   Moreover, Plaintiffs allege Barlin implicitly admitted during a March, 2008 conversation that he misled them regarding the nature of Lahr's borrowers.  Barlin argues these facts are insufficient because Plaintiffs do not adequately identify the documents or when they were in Barlin's possession.  However, these allegations, taken as true, establish a strong inference that Barlin either intentionally deceived Plaintiffs or acted with severe recklessness in doing so.  That Plaintiffs have not provided the title of the document or listed the exact times it was in Barlin's possession is irrelevant.  All that is required is that Plaintiffs' allegations create an inference at least as strong as any competing inference.  Barlin does not offer any competing inference for the Court to consider, and the Court's imagination has not provided one more plausible than that offered by Plaintiffs.  Consequently, the Court rejects Barlin's scienter arguments regarding the Straw-Man Allegations.

Barlin further argues Plaintiffs' Collateral Ownership Allegations do not sufficiently plead scienter.  Specifically, Barlin argues Plaintiffs' "allegations concerning Barlin's knowledge of the falsity of the Collateral Ownership Allegations are likewise vague and conclusive."  Barlin Mot. Dism. at 4.  The Court disagrees.

Plaintiffs make many allegations about how Barlin knew his representations regarding the value of the Manor Loan collateral were false.  Of particular importance here, however, are

---

[5] Plaintiffs state Mr. Turner is the former mayor of Manor.

Plaintiffs' claims that Barlin had information and documents indicating the true ownership of the 414-acre tract; and that Barlin had engaged in a transaction with the same borrower on November 20, 2006—approximately two months prior to Barlin's alleged misrepresentations—in which some of the same collateral was used as security.  With respect to the former claim, Plaintiffs' lack of detail is not fatal to a proper pleading of scienter; Plaintiffs have alleged sufficient facts to put Barlin on notice, and to create a reasonable inference that discovery will unearth admissible evidence.  Both claims, taken together and assumed to be true, give rise to a strong inference that Barlin intended to deceive Plaintiffs or acted with severe recklessness in doing so.[6]  Therefore the Court rejects Barlin's scienter arguments regarding the Collateral Ownership Allegations.

Finally, Barlin challenges Plaintiffs' pleading of scienter with respect to the Collateral Value Allegations.  Again, Barlin complains Plaintiffs' allegations are not sufficiently detailed.  The Court disagrees.

Plaintiffs allege Barlin knew his representations about the value of the collateral were false because he assisted in brokering another investment, 90 days prior, involving the same borrower and collateral; because he reviewed an appraisal in that transaction that listed the value of the collateral as $12.8 million; because he knew the borrower had just purchased the tract for $12.8 million; and because Barlin ultimately told Plaintiff Vodicka that Barlin knew Defendant Lahr used "trumped up appraisals."  Am. Compl. at ¶ 70.  The facts, taken collectively and assumed to be true, give rise to a strong inference that Barlin intentionally deceived Plaintiffs or acted with severe recklessness in

---

[6] Barlin also appears to argue Plaintiffs have failed to explain how Barlin could have known a potential investor would want to know the identity of the person providing collateral for the loan.  Although this argument was apparently important enough to Barlin to warrant underlining, the Court refuses to penalize Plaintiffs for failing to explain why an investor might wish to know the identities of the people with whom he is doing business.

doing so.  It is unclear what "concrete facts" Barlin expects Plaintiffs to allege regarding Barlin's business dealings with third parties; however, the Court finds the facts alleged sufficiently concrete to put Barlin on notice and to give assurances Plaintiffs have a potential claim.  As before, if Barlin wishes to challenge the factual basis of Plaintiffs' claims, a motion to dismiss is not the proper forum.  The Court therefore rejects Barlin's scienter arguments regarding the Collateral Value Allegations.

Barlin also argues his indirect investment, through Defendant Lahr, in the Manor Loan strongly suggests the absence of scienter.  The Court has already addressed this argument in Defendant Lahr's Motion to Dismiss above.  The same basic analysis holds and the Court likewise rejects this argument with respect to Barlin.[7]

Barlin next argues the alleged misrepresentations underlying the Collateral Value Allegations are not material.  In support of this argument, Barlin cites a 1938 Texas state appellate court decision stating that opinions regarding the value of securities generally are not actionable.  More recent Fifth Circuit case law suggests the opposite; thus, the Court rejects this argument.

A "statement or omitted fact is 'material' if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest."  *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002) (quotation omitted).  Moreover, "[a]n opinion may constitute fraud if the speaker has knowledge of its falsity."  *Rubinstein v. Collins*, 20 F.3d 160, 172 (5th Cir. 1994) (quoting *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983).

---

[7] Barlin's argument is less compelling than Lahr's, because Barlin was exposed to less risk.  Barlin allegedly loaned Lahr the money to invest in the Manor deal; presumably, Lahr would owe Barlin that money regardless of the fate of the Manor project.  Moreover, Plaintiffs allege Barlin's investment was secured with collateral beyond that securing Plaintiffs'; Barlin could always assert his claim to the collateral if his investment failed.

Further, "[k]nowingly failing to disclose material information necessary to prevent a statement from being misleading is actionable as fraud under Texas law." *Id.* at 172 n.53.  Finally, "a representation concerning value may be false when one who has superior access to information knows that the representation made has no reasonable basis in fact." *Id.*

Clearly, if Plaintiffs' claims are true, Barlin had knowledge of the falsity of his statements. Moreover, if Plaintiffs' claims are true, Barlin had access to superior information, namely an appraisal.  Certainly, a reasonable investor would consider the information important in making a decision to invest.  Therefore, neither Texas nor federal law renders Barlin's alleged statement immaterial simply because it concerned the value of the collateral.  Consequently, the Court concludes Barlin's misrepresentations were material under Texas and Fifth Circuit law and rejects Barlin's argument to the contrary.

Finally, Barlin challenges the loss causation element of Plaintiffs' § 10(b) and Rule 10b-5 claims.  Barlin's argument echos that of Defendant Lahr, above.  Unfortunately for Plaintiffs, they have not incorporated any loss causation allegations against Barlin into their complaint. Consequently, the Court finds Plaintiffs' conclusory statements insufficient and DISMISSES their § 10(b) and Rule 10b-5 claims against Barlin.  The Court grants Plaintiffs leave to amend their complaint.

**b.    State Law Claims**

The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Barlin in the absence of a viable federal claim.  Consequently, Barlin's motion to dismiss Plaintiffs' state law claims is GRANTED and Plaintiffs' state law claims are DISMISSED.

**Conclusion**

Because Plaintiffs claims against the Savrick Defendants have failed to meet the pleading requirements of *Twombly* and *Iqbal*, Federal Rule of Civil Procedure 9(b), and the PSLRA, they are DISMISSED.

For the same reasons, and because Plaintiffs have failed to sufficiently plead "control person" liability, Plaintiffs' claims against Defendants Gunn and Schiffgens are DISMISSED.

Because Plaintiffs have sufficiently pleaded § 10(b) and Rule 10b-5 claims against Defendant Lahr, Lahr's motion to dismiss is DENIED.

Because Plaintiffs have failed to sufficiently plead loss causation against Defendant Barlin, Plaintiffs claims against him are DISMISSED.

The Court grants Plaintiffs leave to amend their complaint.

In accordance with the foregoing,

IT IS ORDERED that the Savrick Defendants' Motion to Dismiss [#66] is GRANTED.  Consequently, Plaintiffs' claims against the Savrick Defendants are DISMISSED WITHOUT PREJUDICE;

IT IS FURTHER ORDERED that Defendants Gunn and Schiffgens' Motion to Dismiss [#69] is GRANTED.  Consequently, Plaintiffs' claims against Defendants Gunn and Schiffgens are DISMISSED WITHOUT PREJUDICE;

IT IS FURTHER ORDERED that Defendant Lahr's Motion to Dismiss [#72] is DENIED;

IT IS FINALLY ORDERED that Defendant Barlin's Motion to Dismiss [#73] is

GRANTED.  Consequently, Plaintiffs' claims against Defendant Barlin are DISMISSED

WITHOUT PREJUDICE.

SIGNED this the 29th day of September 2010.


_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE