**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**STEVEN B. AUBREY and BRIAN E. VODICKA,**
**Plaintiffs,**

-vs-                                                                                  **Case No.  A-10-CA-076-SS**

**PETER E. BARLIN, GREGORY H. LAHR,
SANDRA F. GUNN, MARK E. SCHIFFGENS,
MITCHELL D. SAVRICK, and SAVRICK
SCHUMANN JOHNSON McGARR KAMINSKI
& SHIRLEY, LLP,**
                              **Defendants.**

_____

**O R D E R**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and

specifically Defendant Peter E. Barlin's Motion to Dismiss [#90], Plaintiffs' response [#97] thereto,

and Barlin's reply [#102]; Defendant Sandra F. Gunn's Motion to Dismiss [#92], and Plaintiffs'

response [#96] thereto; and Defendants Savrick Schumann Johnson McGarr Kaminski and Mitchell

D. Savrick (the "Savrick Defendants")'s Motion to Dismiss [#95], Plaintiffs' response [#103]

thereto, and the Savrick Defendants' reply [#104].  Having reviewed the motions, the relevant case

law, and the file as a whole, the Court now enters the following opinion and orders.

As an initial matter, the Court notes Plaintiffs' Motion for Entry of Proposed Scheduling

Order [#83] is listed as pending.  In light of the Court's entry and subsequent abatement and

dismissal of the scheduling order [#87] in this case, Plaintiff's motion is DISMISSED WITHOUT

PREJUDICE as moot.

For the following reasons, Barlin's Motion to Dismiss is DENIED; Gunn's Motion to Dismiss is DENIED; and the Savrick Defendants' Motion to Dismiss is DENIED.

## Background

This is not the Court's first, or even second, examination of the pleadings in this case. The Court therefore only recites the allegations necessary to resolve the motions before it.

## I.     Motion to Dismiss for Failure to State a Claim — Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a motion to dismiss under 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.*

 Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and common sense." *Id.* at 1950.

## II.     Barlin's Motion to Dismiss [#90]

Barlin makes a very limited challenge, asking the Court to dismiss only one part of Plaintiffs' claim. Specifically, Barlin asks the Court to dismiss an alleged misrepresentation he made as part of the "Manor Loan" real estate investment, on the grounds Plaintiffs have not sufficiently pleaded loss causation with respect to this misrepresentation. Because the Court finds Plaintiffs have sufficiently pleaded loss causation with respect to this misrepresentation, it DENIES Barlin's motion.

## A.     Barlin's Alleged Misrepresentation

According to Plaintiffs, the "Manor Loan" investment was "one part of a larger, pooled mortgage interest secured by various personal property and real property in Manor, Texas." Second Amended Complaint (2nd Am. Compl.) at ¶ 12. Plaintiffs claim they invested a total of $915,000.00 on the basis of, among other things, misrepresentations by Barlin about the identity of the principals behind the borrowing entity. *Id.* at ¶¶ 12, 48–54. Barlin allegedly told Plaintiffs two men, Vitaly Zaretsky and Jeff Turner, were the principals behind the entity to be funded by Plaintiffs' investment. *Id.* at ¶ 48. Zaretsky was allegedly portrayed as a rich man who had made "'quite a small fortune' in the Manor project." *Id.* Plaintiffs claim Turner was the former mayor of Manor. *Id.* Plaintiffs allege this was a misrepresentation because "Zaretsky and Turner were straw-men and/or not controlling principals" for the borrowing entity. *Id.* Hence, this claim has been referred to as the "Straw-Man" claim.

-3-

**B.      Loss Causation Allegations**

Plaintiffs claim they "would not have made the Manor Loan investment if [they] had known the true identities of the controlling principals of the borrowers, or that Zaretsky and Turner were acting as straw-men." *Id.* at ¶ 53.  Plaintiffs claim supposedly-wealthy Zaretsky and former-mayor Turner were named as controlling principals of the borrowing entity to provide credibility to the investment, and to conceal the involvement of "numerous persons of dubious background." *Id.* at ¶ 49.  Finally, Plaintiffs contend Barlin's misrepresentation was the proximate cause of their losses because "[t]he concealed risk—the creditworthiness of the borrower—materialized when the borrower defaulted and Plaintiffs could not look to the collateral for repayment of the investment." *Id.* at ¶ 54.

**C.      Barlin's Argument**

Barlin argues Plaintiffs have failed to sufficiently plead loss causation for two reasons.  First, Plaintiffs failed to allege they "relied upon the independent financial ability of the borrower's controlling principals to repay the Manor Loan in the form of a personal guaranty or other recourse." Barlin's Motion to Dismiss [#90] at 3.  Second, Plaintiffs failed to allege "the 'true' principals of the borrowers adversely impacted the borrower's financial performance or contributed to the eventual default." *Id.*  "Stated differently," Barlin argues, "there is no allegation that if Plaintiffs knew the 'true' principals it would have impacted their analysis of the risk of loss which they say materialized." *Id.* at 4.

**D.      Plaintiffs' Response**

In response, Plaintiffs argue they have sufficiently pleaded loss causation because: (1) they alleged the supposedly-wealthy Zaretsky personally guaranteed the Manor Loan; and (2) Barlin's

alleged misrepresentations concealed the fact the controlling principals were not real-estate developers. Plaintiffs' Response [#97] at 3–4. If Zaretsky had, in fact, been wealthy, Plaintiffs argue they could have relied on his personal guaranty and would not have suffered losses from the failed investment. Similarly, if the controlling principals had been real estate developers (and had in fact used the investment money to improve the property), the value of the collateral real estate may have been improved enough to either prevent the borrower from defaulting at all; or to mitigate Plaintiffs' damages if the borrower did default.

As Barlin points out, the allegations supporting Plaintiffs' responsive argument were neither clear nor easy to find in the complaint. However, Plaintiffs did state in a section of their complaint related to the Manor Loan, "Creative Financial obtained a guaranty from Zaretsky." 2nd Am. Compl. at ¶ 169 n.20. Further, they noted the misrepresentation was material because a "reasonable investor would find it significant to know the true identities of persons 'behind the curtain' . . . especially when repayment of the investment depend[ed] upon ability of the borrower to profitably develop raw land serving as collateral." *Id.* ¶ 50.

It is questionable whether these allegations, standing alone, would be sufficient to support Plaintiffs' responsive arguments. However, to the extent Plaintiffs' response augments their loss causation allegations, the Court interprets the response as a motion to amend their complaint. *See Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (construing a response to a motion to dismiss as a motion to amend pleading). As the Court noted in its February 11, 2011 Order [#108], there is little question the parties in this case are well aware of the issues to be litigated. The Court therefore finds there is neither surprise nor prejudice to Barlin in allowing Plaintiffs to—once again—amend their pleadings. Although the Court grows weary of Plaintiffs' apparent inability to

-5-

properly plead their claims, a motion to dismiss is intended to weed out implausible or legally deficient claims before the parties incur the expense of discovery; such a motion should not be used to defeat a plausible claim on technical grounds.

The Court therefore grants Plaintiffs' motion to amend and considers their responsive allegations.

**E.      Loss Causation**

**1.      Legal Standard**

The Private Securities Litigation Reform Act (PSLRA) makes loss causation a required element of any private securities action: "In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. § 78u-4(b)(4).

The Fifth Circuit has held the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and Federal Rule of Civil Procedure 8(a)(2), require "the plaintiff to allege, in respect to loss causation, a facially 'plausible' causal relationship between the fraudulent statements or omissions and plaintiff's economic loss." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009).

As the Second Circuit has further stated, the loss causation requirement is satisfied:

if the risk that caused the loss was within the zone of risk *concealed* by the misrepresentations and omissions alleged by a disappointed investor. . . . Thus to establish loss causation, "a plaintiff must allege . . . that the subject of the fraudulent statement or omission was the cause of the actual loss suffered."

*Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005) (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001)).

## 2.     Analysis

Plaintiffs have sufficiently pleaded loss causation regarding the Straw-Man claim. The "zone of risk" identified by Plaintiffs encompassed both the default of the borrowing entity, and the losses Plaintiffs incurred because of the insufficient value of the collateral. Plaintiffs allege these risks were concealed by Barlin's misrepresentations regarding Zaretsky's involvement and wealth. If Zarestky had been extremely wealthy, been a controlling principal of the borrowing entity, and personally guaranteed the investment, he might either have used his funds to prevent the borrowing entity from defaulting, or used his funds to prevent losses to Plaintiffs after default. Plaintiffs also allege Barlin's misrepresentations concealed the fact the principals were not real estate developers. Plaintiffs allege these misrepresentations concealed the actual risk of default by the borrower; and the risk of losses to Plaintiffs because the value of the collateral was insufficient to cover their investments. If the principals had been real estate developers rather than criminals, Plaintiffs allege, the risk of default might have been reduced or their losses mitigated.[1]

## 3.     Conclusion

The Court finds there is a facially plausible causal relationship between these misrepresentations and Plaintiffs' losses. The risks alleged by Plaintiffs were default of the borrower and insufficient value of the collateral. The misrepresentations concealed the likelihood of default and the consequences thereof. The risks that ultimately materialized were, of course, borrower default and losses to Plaintiffs due to insufficient value of the collateral. The Court therefore finds

---

[1] Based on Barlin's motion and reply, it is unclear whether Plaintiffs will be able to provide evidence to support these claims. However, such issues are properly explored in a motion for summary judgment, not a motion to dismiss.

Plaintiffs have sufficiently pleaded loss causation with respect to their Straw-Man claim.[2] Consequently, Barlin's motion to dismiss is DENIED.

### III.  Gunn's Motion to Dismiss [#92]

Gunn argues the Court should once again dismiss Plaintiffs' claims against her because: (1) Plaintiffs' repetition of their old allegations remain insufficient; and (2) Plaintiffs' new allegations are not sufficient to change this result. Plaintiffs, of course, disagree. The Court agrees with Plaintiffs and DENIES Gunn's motion.

### A.  Plaintiffs' Allegations Against Gunn

In summary, Plaintiffs make the following factual allegations against Gunn: (1) she was the "incorporator, registered agent, active owner, director, president, and employee of Creative Financial," 2nd Am. Compl. at ¶ 8; (2) she (and Defendant Lahr) "made all decisions regarding what investments would be created, packaged, marketed, and sold by Creative Financial," *id*. at ¶ 8; (3) she hired both Barlin and the Savrick Defendants, *id.*; (4) she published documents indicating, in essence, Creative Financial's investments were conservative and safe, *id.* at ¶ 9; (5) she directed Defendants Lahr and Barlin to sell "[s]ome of the securities at issue in this lawsuit," *id.* at ¶ 10; (6) she "received outsized compensation directly from the sales as well as for purported servicing of the securities," *id.*; (7) she directed the creation, packaging, and offering of both the Temple Loan, *id.* at ¶ 11, and the Manor Loan, *id.* at ¶ 12; (8) on June 9, 2006, she sent the Savrick Defendants an email regarding the Temple Loan indicating the borrowing entity was in default to the first and

---

[2] The Court further notes it is unclear whether Plaintiffs intend many separate claims against Barlin relating to the Manor Loan, or a single claim comprised of many misrepresentations. In the latter case, Barlin's motion to dismiss would have to be denied, as he does not challenge the sufficiency of the other misrepresentations. However, as both parties appear to interpret each misrepresentation as a separate claim, the Court does likewise.

second lienholders, but failed to disclose the email to Plaintiffs, *id.* at ¶ 42; (9) she was a broker for Plaintiffs, *id.* at ¶ 42 n.6; (10) she benefitted from her failure to disclose the email by receiving brokerage fees, book-keeping fees for servicing the loan, and being able to pay money to prior investors on unrelated investments, thereby maintaining the illusion such prior investments were viable, *id.* at ¶ 44; (11) she decided which attorneys worked on which investments, *id.* at ¶ 44; and (12) on January 30, 2007, the Savrick Defendants sent her an email regarding the Manor Loan which indicated some of the collateral had been pledged to a third party, but she did not disclose this email to Plaintiffs, *id.* at ¶ 125.

**B.     "Control Person" Liability**

Gunn argues Plaintiffs have failed to state a claim that she is liable as a "control person" under 15 U.S.C. § 78t.  That section states in part:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).  Specifically, Gunn argues Plaintiffs' claims fail because "Plaintiffs simply make conclusory allegations of control."  Gunn's Motion [#92] at ¶ 4.

Plaintiffs respond by citing the Fifth Circuit's opinion in *G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945 (5th Cir. 1981).  That case indicates to establish "control person" liability a plaintiff must demonstrate a defendant's general "control" over the liable person, but not the defendant's "participation in the wrongful transaction."  *Thompson*, 636 F.2d at 958.  "Lack of participation and good faith constitute an affirmative defense for a controlling person."  *Id.*  The

*Thompson* court found "control person" liability for a corporate officer who was a 24% stockholder, an officer, a director, and who was involved in the day-to-day operations of the business, because he had the "requisite power to directly or indirectly control or influence corporate policy." *Id.* Plaintiffs argue they have sufficiently pleaded Gunn was a control person under this standard. The Court agrees.

As noted above, Plaintiffs allege Gunn was "incorporator, registered agent, active owner, director, president, and employee of Creative Financial." 2nd Am. Compl. at ¶ 8. In their response to Gunn's motion, they are even more emphatic, succinctly stating, "Gunn holds (or co-holds) every position of authority over Creative Financial that could exist." Plaintiffs' Response [#96] at ¶ 12. Taking these allegations as true, it is difficult to see how Gunn could *not* be a "control person" under 15 U.S.C. § 78t. It may be Plaintiffs will be unable to provide evidence for their claims at the summary judgment stage, but the Court finds Plaintiffs have sufficiently pleaded Gunn was a control person. And while "[c]ontrol person liability is secondary only and cannot exist in the absence of a primary violation," *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 383 (5th Cir. 2004), the Court has declined to dismiss Plaintiffs' claims against Defendants Barlin and Lahr, both of whom were allegedly controlled by Gunn. The Court therefore assumes the truth of primary violations by Barlin and Lahr for the purposes of this inquiry. Consequently, Plaintiffs have pleaded allegations sufficient to state a plausible claim for control person liability against Gunn.

**C.    Primary Liability**

**1.    Plaintiffs' Allegations**

Plaintiffs also argue Gunn is primarily liable for her conduct. Specifically, Plaintiffs claim the following allegations are sufficient for Gunn to be directly liable under § 10(b): (1) failing to

disclose the borrower on the Temple Loan was in default; (2) failing to disclose the borrower on the

Manor Loan had encumbered some of the collateral for Plaintiffs' investment; and (3) false and

misleading representations like those contained in Creative Financial's marketing materials.

Plaintiffs' Response [#96] at ¶ 13.

## 2.        Gunn's Argument

Gunn argues Plaintiffs' pleadings are deficient because Plaintiffs "make the same stock

allegations as to materiality and reliance over and over again in their pleadings," and such claims are

"not plausible on their face as they relate to Ms. Gunn." Gunn's Motion [#92] at ¶ 7. Further, Gunn

argues Plaintiffs do not plead either Plaintiff ever met with Gunn, spoke with her, or had any basis

for relying on Gunn or expecting to hear from her. *Id.* With respect to allegation (1) above, Gunn

argues she sent the email to the Savrick Defendants after Plaintiffs had already made their

investments; thus, Gunn argues, Plaintiffs could not have relied on the omission, nor was the

omission material. *Id.* With respect to allegation (2), Gunn argues Plaintiffs failed to sufficiently

allege materiality and reliance, and reiterates her argument Plaintiffs had no expectation they would

hear from her. *Id.* at ¶ 8. Finally, with respect to allegation (3), Gunn notes "Plaintiffs very

pointedly fail to allege that they ever saw" the marketing materials. *Id.* at ¶ 9. Indeed, Gunn claims

Plaintiffs never did see such materials; therefore, she argues, they could not have relied on them.

*Id.* & n.6.

## 3.        Plaintiffs' Response

In response, Plaintiffs claim Gunn had a duty to disclose because she acted as a broker and,

under Texas law, brokers owe fiduciary duties to their clients. Plaintiffs' Response [#96] at ¶ 14.

Moreover, with respect to allegation (1), Plaintiffs argue although they had placed money in escrow

prior to June 9, 2006 (the date Gunn allegedly sent the email), they had not yet *closed* on the deal;

thus, the information was material, Gunn had a duty to disclose it, and the Plaintiffs acted in reliance

on Gunn's omission because reliance is presumed in omission cases. *Id.* at ¶¶ 17–21.  With respect

to allegation (2), Plaintiffs reiterate their duty-to-disclose and presumed-reliance arguments, and

claim they have sufficiently pleaded reliance. *Id.* at ¶¶ 22–24.  Finally, with respect to allegation (3),

Plaintiffs argue it is irrelevant whether they saw the marketing materials because the materials simply

corroborate what Gunn (and other Defendants) told them verbally. *Id.* at ¶ 26.  Plaintiffs further

argue they have sufficiently pleaded materiality and scienter with respect to this allegation.

### 4.     Legal Standard

### a.     Prima Facie Case — § 10(b)

For a plaintiff's § 10(b) claim to survive a motion to dismiss, the plaintiff's complaint must

allege facts sufficient for the Court to find it plausible a defendant: (1) made a misrepresentation or

omission; (2) of a material fact; (3) in connection with the purchase or sale of a security; (4) that

such misrepresentation or omission was made with scienter by the defendant; (5) that the plaintiff

justifiably relied on the misrepresentation or omission; (6) that the plaintiff suffered damages; and

(7) that the defendant's misrepresentation or omission was the proximate cause of the plaintiff's loss.

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003).

### b.     Particularity

The PSLRA imports the heightened pleading standard for claims of fraud under Rule 9(b);

therefore, to avoid dismissal for lack of particularity, a plaintiff must: (1) specify each statement

alleged to have been misleading, *i.e.,* contended to be fraudulent; (2) identify the speaker; (3) state

when and where the statement was made; (4) plead with particularity the contents of the false

representations; (5) plead with particularity what the person making the misrepresentation obtained thereby; and (6) explain the reason or reasons why the statement is misleading, *i.e.,* why the statement is fraudulent. *Rosenzweig*, 332 F.3d at 866.

**c.      Materiality**

For an omission to be material under the PSLRA, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) (quotation omitted)**.**

**d.      Scienter**

To establish scienter, a plaintiff must show the defendant intended to deceive, defraud, or manipulate, or that the defendant acted with severe recklessness. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009). Severe recklessness is limited to "highly unreasonable omissions or misrepresentations" that involve an "extreme departure from the standards of ordinary care." *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 408 (5th Cir. 2001).

Moreover, the PSLRA requires a plaintiff plead specific facts sufficient to give rise to a "strong inference" the defendant acted with scienter. 15 U.S.C. § 78u-4(b). In determining whether the pleaded facts give rise to a "strong" inference of scienter, a court should consider all of the facts alleged, taken collectively, and should also take into account plausible opposing inferences. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007). The inference of scienter need not be irrefutable, nor even the most compelling of all competing inferences, but must be strong in light of other inferences. *Id.* at 324. Ultimately, a complaint will only survive if "a reasonable

person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

5.     **Analysis**

a.     **Allegation One — Temple Loan — Failure to Disclose the Borrower was in Default**

Plaintiffs claim Gunn knew about the borrowing entity's default prior to the closing of Plaintiffs' loan.  While Gunn may dispute this fact, the Court is obligated to resolve factual disputes in Plaintiffs' favor at this stage.  Thus, the Court assumes Gunn could have advised Plaintiffs of the borrowing entity's alleged default prior to closing.

Plaintiffs allege Gunn was a broker, a contention the Court is obligated to accept as true. Under Texas law, a broker "is a fiduciary required to exercise fidelity in good faith toward his principal in all matters within the scope of his employment." *Janes v. CPR Corp.*, 623 S.W.2d 733, 740 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).  "This requirement . . . imposes upon him the positive duty of communicating all information he may possess or acquire which is, or may be, material to his employer's advantage." *Id.*  The Court thus concludes Gunn owed Plaintiffs a duty to disclose under Texas law.

Reliance on an omission is presumed where a plaintiff (1) alleges a claim based primarily on omissions or non-disclosure; and (2) demonstrates the defendant owes him or her a duty of disclosure. *Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 384 (5th Cir. 2007).  As both elements are met here, the Court presumes Plaintiffs relied on Gunn's omissions.

Although Gunn is correct Plaintiffs do not allege Gunn knew about Plaintiff's loan prior to the closing, the Court disagrees this is fatal to Plaintiff's claim.  As noted above, the scienter

-14-

required for a PSLRA claim encompasses "severe recklessness," which is evidenced by highly unreasonable omissions or misrepresentations that involve an extreme departure from the standards of ordinary care.  If Gunn was in charge of Creative Financial, owed fiduciary duties to Plaintiffs, and had knowledge about a substantial risk regarding one of her investments—all of which Plaintiffs allege—the Court finds the inference Gunn acted with severe recklessness at least as compelling as any opposing inference, such as Gunn having been merely negligent or grossly negligent.

Gunn makes no particular challenge to the materiality of her alleged omission, merely objecting to Plaintiffs' "stock" allegations on the issue.  The Court therefore finds she has waived her challenge to materiality.  In any case, the Court finds the omitted facts material, as any reasonable investor would want to know if the entity to which they were loaning money was already defaulting on its prior obligations.

Consequently, the Court denies Gunn's motion with respect to her alleged failure to disclose the borrowing entity for the Temple Loan was in default.

**b.     Allegation Two — Manor Loan — Failure to Disclose Encumbrances on Collateral**

Gunn's arguments—no  reliance, materiality, or duty to disclose—concerning Plaintiffs' second allegation are foreclosed for the reasons stated above.  The Court therefore denies Gunn's motion on this issue.

**c.     Allegation Three — Misleading Statements Illustrated by Marketing Materials**

Plaintiffs argue: "The import of the brochure and flyer is that the representations contained therein almost completely corroborate all of the representations that Lahr and Barlin, acting as agents of Creative Financial, orally made to Plaintiffs."  Plaintiffs' Response [#96] at ¶ 26.  However, Defendants Lahr and Barlin's verbal misrepresentations to Plaintiffs, standing alone, cannot be used

-15-

to impose primary liability on Gunn.  To the extent Plaintiffs rely on the brochure and flyer for this purpose, it is irrelevant to their direct claim against Gunn.

However, Plaintiffs also allege: "Creative Financial instructed its agents such as Lahr and Barlin to orally make [the misrepresentation in the marketing material]. . . . After making these misrepresentations and continuing thereafter, Creative Financial, Gunn, and Lahr failed to disclose to Plaintiffs that these misrepresentations were false and/or misleading." 2nd Am. Compl. at ¶ 168.

Construed in the light most favorable to them, Plaintiffs' claim thus seems to be: Gunn instructed Lahr and Barlin to make misrepresentations to Plaintiffs, then failed to disclose to Plaintiffs those misrepresentations were false or misleading.  Put another way, Plaintiffs claim Gunn perpetrated the misrepresentations through Lahr and Barlin.

This theory of liability appears to be explicitly provided for in the PSLRA: "It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person." 15 U.S.C. § 78t(b).  The Court therefore addresses the parties' arguments regarding this claim.

Plaintiffs argue reliance is presumed because this claim involves an omission.  However, as noted above, reliance is only presumed when a plaintiff alleges a claim based primarily on omissions or non-disclosure.  Here, the primary thrust of Plaintiffs' complaint is Gunn *directed* Lahr and Barlin to mislead Plaintiffs, not that she subsequently failed to disclose the false and misleading nature of the statements.  Every claim of affirmative misrepresentation implicitly contains a claim the misrepresentation was not subsequently disclosed, but that does not bring every misrepresentation

-16-

within the ambit of the presumptive reliance rule.  The Court therefore declines to presume reliance on the alleged misrepresentations.

Nevertheless, Plaintiffs have alleged they did indeed rely on the misrepresentations. According to Plaintiffs, Lahr and Barlin made these misrepresentations to them.  The Court cannot say Plaintiffs' reliance was not justified.  The Court therefore finds Plaintiffs have sufficiently pleaded reliance.

Gunn does not challenge the materiality of the misrepresentations themselves, only the materiality of the marketing materials.  Nor does she challenge Plaintiffs' allegations regarding Lahr and Barlin's scienter in making the false statements.  And any challenge Gunn might make to Plaintiffs' allegations she told Lahr and Barlin to make the misrepresentations would be factual, and therefore inappropriate in the context of a motion to dismiss.  Thus, the Court finds Plaintiffs' complaint alleges sufficient facts to establish a plausible case of materiality and scienter. Consequently, the Court finds Plaintiffs have sufficiently pleaded this claim.

**6.      Conclusion — Primary Liability**

The Court finds Plaintiffs have sufficiently alleged primary violations by Gunn.  The Court therefore DENIES Gunn's motion on this point.

**D.      Conclusion — Gunn's Motion to Dismiss**

For the foregoing reasons, the Court DENIES Gunn's motion to dismiss.  Plaintiffs may be unable to provide sufficient evidence to support all of their claims, but their allegations are sufficient to survive a motion to dismiss.

## IV.     The Savrick Defendants' Motion to Dismiss [#95]

The Savrick Defendants argue Plaintiffs' claims against them should be dismissed because: (1) the Savrick Defendants owed no duty to disclose information to Plaintiff Aubrey; (2) Plaintiffs have insufficiently pleaded scienter; and (3) Plaintiffs improperly seek to impose aider and abetter liability upon the Savrick Defendants.  Savrick Motion [#95] at 4.  For the following reasons, the Court disagrees with the Savrick Defendants and DENIES their motion.

### A.     Plaintiffs' Allegations Against the Savrick Defendants

Plaintiffs make the following factual allegations against the Savrick Defendants: (1) they "received consistent and sizeable fees to duplicate and rubber-stamp existing loan forms," 2nd Am. Compl. at ¶ 10; (2) they received the June 9, 2006 email from Gunn indicating the borrowing entity on the Temple Loan had defaulted, but failed to disclose the information to Plaintiffs,  *id.* at ¶ 42; (3) they prepared the promissory note and deed of trust for the first and second lienholders on the Temple property, *id.*; (4) they represented Defendant Lahr in connection with his investment in the Temple Loan, *id.*; (5) they were attorneys for Plaintiffs, *id.* & n.6; (6) they benefitted from their non-disclosure of the email "by continuing to receive a steady stream of work and significant revenues from [Creative Financial] and its principals," *id.* at ¶ 44; (7) they sent a January 30, 2007 email to Gunn and Creative Financial regarding the Manor Loan, indicating the underlying collateral had been encumbered, but—even though they knew the collateral was to be used to secure Plaintiffs' investment—did not disclose this information to Plaintiffs,  *id.* at ¶ 125 & n.13; (8) they benefitted from this non-disclosure "by continuing to receive a steady stream of work and significant revenues from [Creative Financial] and its principals," *id.* at ¶ 127; (9) they were aware of "prior fraud perpetrated by Capital Advantage," and lawsuits against Capital Advantage's attorneys, *id.* at ¶ 128;

(10) they failed with respect to the Manor Loan "to disclose that the borrower did not own and therefore could not pledge the 414-acre tract that was to serve as collateral for Plaintiffs' investment," *id.* at ¶ 131; (11) they benefitted from this failure to disclose as described above, *id.* at ¶ 133; (12) they knew the 414 acre tract was worth far less than the $50 million Lahr represented to Plaintiffs, *id.* at ¶ 134; (13) they received an email from an attorney representing a potential investor indicating a full appraisal, survey, and title work should be done if a loan was being made against the Manor property, *id.*; (14) they failed to disclose the "best 40-acre corner" of the Manor property was subject to an existing option to purchase held by a third party, and benefitted from that omission, *id.* at ¶¶ 137, 139; (15) they declined title insurance on the 414-acre Manor tract, which would have revealed the existence of the option on the 40-acre corner and the borrower's lack of title, and benefitted from the omission, *id.* at ¶¶ 143, 145; (16) they obtained title insurance in all other transactions, *id.* at ¶ 146; (17) they failed to disclose that the Manor Loan borrower owed $1.8 million in debt in connection with the purchase of the 414-acre tract, and benefitted from their omission, *id.* at ¶¶ 155, 157; and (18) they failed with respect to the Manor Loan to disclose Plaintiffs' junior lien against real property could only be obtained with the consent of the senior lienholders or that such consent would not be obtained, and they benefitted from the omission, *id.* at ¶¶ 161, 163.

## B.   Duty to Disclose

Plaintiffs do not allege any affirmative misrepresentations by the Savrick Defendants, nor do they allege the Savrick Defendants induced others to make such misrepresentations or are "control persons." Thus, Plaintiffs' claims can only succeed if the Savrick Defendants had a duty to disclose.

**1.      The Parties' Arguments**

The Savrick Defendants argue they owed no such duty to Plaintiff Aubrey. Savrick Motion [#95] at 5. In support of this argument, the Savrick Defendants point to Texas state court documents of which this Court has previously taken judicial notice, see Order [#61] of April 28, 2010, in which the state court found no attorney-client relationship between Plaintiff Aubrey and the Savrick Defendants.

Plaintiffs respond by arguing: (1) a court cannot grant a motion to dismiss on the basis of res judicata; and (2) res judicata does not apply where, as here, the other court lacked subject matter jurisdiction over the claim. Plaintiffs' Response [#103] at ¶¶ 9–12.

The Savrick Defendants reply by noting a court is permitted to consider judicially-noticed matters when deciding a motion to dismiss. Savrick Reply [#104] at 2. As this Court has already taken judicial notice of the state court ruling, they argue, nothing precludes the Court from considering it here. *Id.*

**2.      Analysis**

Both parties are correct about the underlying rules they cite, and the rules appear to be in tension. On the one hand, a court can consider judicially-noticed matters of public record in deciding a motion to dismiss. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). On the other hand, "generally a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005). Finally, a failure to timely object to the court's consideration of documents establishing res judicata waives the objection. *Id.*; *Norris*, 500 F.3d at 461 n.9.

Here, Plaintiffs did not object to the Court's taking judicial notice of the state court documents.  However, they do object to the Court's consideration of them in the context of the Savrick Defendants' motion to dismiss.  The documents are, of course, public records.

The Court need not decide how these rules interact, however, because the Court agrees with Plaintiffs' second argument: under Fifth Circuit and Texas law, res judicata does not apply where the other court lacked subject matter jurisdiction.  *See Browning v. Navarro*, 887 F.2d 553, 558 (5th Cir. 1989) ("It is black-letter law that a claim is not barred by res judicata if it could not have been brought. If the court rendering judgment lacked subject-matter jurisdiction over a claim or if the procedural rules of the court made it impossible to raise a claim, then it is not precluded."); *Montgomery v. Blue Cross and Blue Shield of Tex., Inc.*, 923 S.W.2d 147, 150 (Tex. App.—Austin 1996, writ denied) ("Res judicata only applies if there is an existing final judgment *by a court of competent jurisdiction*.").  Indeed, the Savrick Defendants' own state court pleading stated, "Without subject matter jurisdiction, a court cannot render a valid judgment."  Savrick Motion for Judicial Notice [#11], Ex. C at 3.

**3.      Conclusion — Duty to Disclose**

Because the Texas court granted the Savrick Defendants' motion, it found Plaintiff Aubrey lacked standing to bring his claim; without a valid plaintiff, the court lacked subject matter jurisdiction over the claim.  Consequently, the Court finds Plaintiffs' claim they had an attorney-client relationship with the Savrick Defendants is not precluded by res judicata.  Therefore, the Court must accept Plaintiffs' representation as true.  Under Texas law, the attorney-client relationship imposed upon the Savrick Defendants a duty to disclose: "As a fiduciary, an attorney is obligated to render a full

-21-

and fair disclosure of facts material to the client's representation." *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988).

## C.    Scienter

The Savrick Defendants argue Plaintiffs have failed to sufficiently plead scienter.  The Court disagrees.  Plaintiffs' allegations, taken as a whole, give rise to a strong inference of scienter.  The Court bases its conclusion in large part on the following allegations against the Savrick Defendants: (1) they failed to disclose the borrower on the Temple Loan had defaulted; (2) they failed to disclose the Manor Loan collateral had been encumbered; (3) they failed to disclose the borrower did not own the 414-acre Manor Loan tract; (4) they failed to disclose the value of the 414-acre Manor Loan tract was far below the $50 million Plaintiffs believed it was worth; (5) they failed to disclose the 40-acre corner of the Manor property was subject to an option by a third party; (6) despite uniform policy to the contrary, they failed to obtain title insurance on the 414 acre Manor Loan tract; (7) they failed to disclose the Manor Loan borrower owed $1.8 million on the purchase of the 414 acre tract; (8) they failed to disclose Plaintiffs' promised junior lien could only be obtained with the consent of the senior lienholder, whose consent was not forthcoming; and (9) they benefitted from these omissions by maintaining a steady stream of clients from Creative Financial.

This litany of allegations, if true, makes it likely the Savrick Defendants acted with at least severe recklessness in failing to disclose information to Plaintiffs.  The most plausible competing inference is negligence or gross negligence on the part of the Savrick Defendants.  While this inference is plausible, the number and serious nature of the alleged omissions leads this Court to conclude the inference of scienter is at least as compelling as any competing inference.  The Court therefore rejects the Savrick Defendants' argument on this point.

**D.      Aider and Abetter Liability**

Taking Plaintiffs' allegations as true, the Court has found the Savrick Defendants had a duty to disclose material information to Plaintiffs.   Moreover, the Court has found Plaintiffs have sufficiently pleaded scienter.   The Savrick Defendants' aider-and-abetter argument is therefore foreclosed.   The Court finds Plaintiffs' allegations sufficient to impose primary liability on the Savrick Defendants for their omissions.   The Court thus rejects the Savrick Defendants' argument.

**E.      Conclusion — Savrick Defendants' Motion to Dismiss**

For the foregoing reasons, the Court DENIES the Savrick Defendants' motion to dismiss.

**Conclusion**

Plaintiffs have sufficiently alleged loss causation with respect to the Straw-Man claim against Defendant Barlin.   Moreover, they have sufficiently alleged "control person" and primary liability against Defendant Gunn.   Finally, they have pleaded facts sufficient to establish primary liability against the Savrick Defendants.

Accordingly,

IT IS ORDERED THAT Defendant Peter E. Barlin's Motion to Dismiss [#90] is DENIED;

IT IS FURTHER ORDERED THAT Defendant Sandra F. Gunn's Motion to Dismiss [#92] is DENIED:

IT IS FURTHER ORDERED THAT the Savrick Defendants' Motion to Dismiss [#95] is DENIED.

IT IS FINALLY ORDERED THAT Plaintiffs' Motion for Entry of Proposed Scheduling Order [#83] is DISMISSED WITHOUT PREJUDICE as moot.

SIGNED this the 16th day of February 2011.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE