THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STEVEN B. AUBREY and BRIAN E. VODICKA, | § § § | 1-10-CV-076-DAE |
| Plaintiffs, | § § § | |
| vs. | § § | |
| PETER E. BARLIN, GREGORY H. LAHR, SANDRA F. GUNN, | § § § § | |
| Defendants. | § § | |

ORDER: (1) GRANTING MOTION FOR SANCTIONS;
(2) GRANTING MOTION FOR ATTORNEYS' FEES

Before the Court are Motions for Sanctions under the Private

Securities Litigation Reform Act ("PSLRA"), filed by Defendant Peter E. Barlin

(Dkt. # 716) and joined by Sandra F. Gunn and Gregory Lahr (Dkt. # 717), as well

as a Motion for Attorney Fees by Barlin (Dkt. # 744).  Plaintiffs Steven Aubrey

and Brian Vodicka (collectively, "Plaintiffs") did not file a response.[1]  Pursuant to

Local Rule CV-7(h), the Court finds these matters suitable for disposition without

---

[1] Plaintiffs requested additional time to respond to the Motions for Sanctions after their attorneys withdrew from representation, and were granted a total of thirty additional days to respond.  (Dkts. ## 723, 726.)  On March 24, 2016, Mr. Vodicka requested an additional thirty days to respond to the Motions for Sanctions (Dkt. # 750); this Court denied the Motion (Dkt. # 753).  While not represented by counsel, Mr. Vodicka is himself an attorney licensed to practice in the state of Texas.

1

a hearing.  For the reasons stated below, the Motions for Sanctions are **GRANTED**, and Barlin's associated Motion for Attorney Fees is **GRANTED**.

<u>BACKGROUND</u>

The instant motions arise from a lawsuit that has been in federal court since 2010.  Plaintiffs' first complaint, filed on January 29, 2010, alleged causes of action against Defendants Barlin, Gunn, and Lahr (collectively, "Defendants") under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962 & 1964.  ("First Compl.," Dkt. # 1, ¶¶ 90–96.)  The same complaint also alleged that the same acts underlying the RICO claims violated Securities and Exchange Commission Rule 10b-5, 17 C.F.R. 240.10b-5, and 15 U.S.C. § 78j(b) (<u>id.</u> ¶¶ 97–100), as well as the Texas Securities Act, Tex. Rev. Civ. Stat. art. 581-1 <u>et</u> <u>seq.</u> (<u>id.</u> ¶¶ 101–105).  Plaintiffs' first law firm, Cox Smith Matthews Inc., withdrew almost immediately after filing the complaint, and were replaced by Pulman Cappuccio Pullen & Benson, LLP.  (Dkts. ## 10, 23.)  On March 22, 2010, Barlin moved to dismiss these claims, arguing that the PSLRA precluded Plaintiffs from asserting a private cause of action under RICO for conduct alleged as securities fraud.  (Dkt. # 22).

On March 29, 2010, Barlin filed his first Motion for Sanctions against Plaintiffs, arguing that Plaintiffs' RICO claims were frivolous and barred by the PSLRA, "which prohibits Plaintiffs from recasting their securities fraud claims as

RICO claims and relying upon conduct that would have been actionable as securities fraud." (Dkt. # 26 ¶ 3(a).) A hearing was held on April 26, 2010 regarding various Motions to Dismiss, and Judge Sam Sparks made the following statement on the record:

> I will have to tell you that the majority of RICO cases filed in federal court end up with [Rule] 11 sanctions against lawyers. And in case the parties are sophisticated and have law degrees, them, too. . . . But I'm just telling you, you've got Rule 11 staring you in the face. And it doesn't look good for your clients when they had all of this time and lawyers and they get up to trial and they quit in the state court.

(Dkt. # 65 at 14:17–20; 15:1–15:4.) The Court subsequently ordered Plaintiffs to amend their complaint. (Dkt. # 61.)

On May 21, 2010, Plaintiffs filed their First Amended Complaint, which alleged federal securities claims under 15 U.S.C. § 78a, et seq. (Dkt. # 63 ¶¶ 19–128), and the Texas Securities Act (id. ¶¶ 129–136). The First Amended Complaint did not contain a cause of action under RICO. Gunn, Lahr, and Barlin filed Motions to Dismiss the First Amended Complaint (Dkts. ## 69, 72, 73); on September 29, 2010 the Court granted Defendants' motions, and granted Plaintiffs leave to amend their complaint (Dkt. # 85). On October 13, 2010, Plaintiffs filed a Second Amended Complaint against various defendants, including Gunn, Lahr, and Barlin, again alleging securities claims under federal and state law, but raising no cause of action under RICO. (Dkt. # 86 ¶¶ 15–181; 182–189.) On January 20, 2012, Plaintiffs filed a Third Amended Complaint against various

defendants, including Gunn, Lahr, and Barlin; this complaint also raised securities

claims under federal and state law, but did not allege a cause of action under RICO.

(Dkt. # 202 ¶¶ 15–182; 183–190.)  On November 16, 2012, the Court held a

hearing and consolidated 1:12–CV–503 and 1:12–CV–768 with the instant case.

(Dkts. ## 293, 295.)

Between June 2012 and June 2013, Plaintiffs changed their attorneys

numerous times (Dkts. ## 241, 279, 301, 317),[2] before designating Brian

Zimmerman as their attorney-in-charge on June 10, 2013 (Dkt. # 321).  On June 26,

2013, after three years of prosecuting their case as a claim for securities fraud

under state and federal law, Plaintiffs filed their First Consolidated Amended

Complaint, again raising their RICO claims against Barlin, Lahr, and Gunn.  (Dkt.

# 326 ¶¶ 232–237.)  The First Consolidated Amended Complaint *explicitly* alleged

that the loans at the basis of the RICO claims, the Temple, Manor, and Long Beach

Loans, constituted securities within the meaning of the Texas Securities Act, and

alleged that Barlin, Lahr, and Gunn were liable for violations of the Texas

Securities Act (id. ¶¶ 291–333.)  Gunn, Lahr, and Barlin filed Motions to Dismiss

---

[2] The Court notes that Plaintiffs moved for one such change of counsel because
their attorney, Clifford Gorman, was disbarred from practicing in the United States
District Court for the Southern District of Florida, precluding him from practicing
before the Western District of Texas.  (Dkt. # 277.)  At least two other counsel
moved to withdraw because disagreements between the Plaintiffs and their counsel
were such that the attorneys did not feel that continued representation was possible.
(Dkt. # 300 ¶ 1; Dkt. # 313 at 2.)

the First Consolidated Amended Complaint on August 12, 2013.  (Dkts. ## 358, 359.)  On September 30, 2013, Barlin filed a Reply to Plaintiffs' Response to his Motion to Dismiss, pointing out that the First Consolidated Amended Complaint alleged the Temple, Manor, and Long Beach Loans constituted securities, yet raised a new claim for RICO violations, and that such claims were prohibited by the PSLRA.  (Dkt. # 406 ¶ 2.)

On December 17, 2013, the Court struck Plaintiffs' First Amended Consolidated Complaint and ordered them to file a Second Amended Consolidated Complaint.  (Dkt. # 466.)  The Second Amended Complaint raised claims against Barlin, Lahr, and Gunn under RICO for a third time (Dkt. # 467 ¶¶ 81, 87–89), while also raising causes of action for violations of the Texas Securities Act (id. ¶¶ 117–154), and for aiding and abetting in violation of the Act (id. ¶¶ 155–158). Barlin, Lahr, and Gunn filed motions to dismiss the Second Amended Consolidated Complaint.  (Dkts. ## 470, 480.)  On February 13, 2014, Barlin filed a second Motion for Sanctions for Plaintiffs' continued attempts to raise a RICO claims based upon securities fraud, despite the PSLRA's prohibition of such claims. (Dkt. # 517 ¶¶ 5–9.)  The Court summarily dismissed Barlin's Motion for Sanctions in an omnibus order.  (Dkt. # 549.)

On May 7, 2014, the Court dismissed Plaintiffs' RICO claims as being barred under Section 107 of the PSRLA, stating:

> Throughout the majority of this case's long and tortured history, Plaintiffs have consistently litigated their claims as fraud in the sale of securities, not under RICO.  Plaintiffs have repeatedly conceded in their pleadings that the loans at issue in this case 'constitute securities' within the meaning of federal and state securities laws."

(Dkt. # 536 at 6.)  The court further found that "[i]ndependent of the PSLRA bar . . . Plaintiffs' attempt to reassert the previously-abandoned [RICO] claims at this late stage of the proceedings is indicative of bad faith."  (Id.)

On May 11, 2015, this case was reassigned to the undersigned.  On August 26, 2015, Barlin filed a Motion for Reconsideration of the Court's Order on Motion for Sanctions (Dkt. # 549).  (Dkt. # 600.)  On October 5, 2015, this Court denied the motion without prejudice, finding that the sanctions should not be assessed until "final adjudication" had occurred.  (Dkt. # 616 at 5–7.)

A jury trial began on January 12, 2016; the jury reached a verdict on February 5, 2016, finding neither Barlin nor Gunn were liable for any of the claims against them, and finding Lahr liable for violations of the Texas Securities Act.  (Dkt. # 712.)  On February 16, 2016, Barlin moved for entry of final judgment (Dkt. # 715), and filed the instant Motion for Sanctions (Dkt. # 716).  Gunn and Lahr joined Barlin's Motion for Sanctions on February 18, 2016.  (Dkt. # 717.)  After granting Plaintiffs additional time to respond to Barlin's Motion for entry of final judgment, the Court entered Final Judgment on March 2, 2016 (Dkt. # 734).  On March 16, 2016, Barlin filed an associated motion for attorneys' fees,

6

requesting $70,305.00 in costs incurred defending against Plaintiffs' RICO claims. (Dkt. # 744.)

## ANALYSIS

I. Whether Sanctions Should be Awarded Under the PSLRA

    A. Rule 11 Findings under the PSLRA

        1. Sanctionable Conduct under the PSLRA

RICO "provides a private right of action for persons harmed by a pattern of racketeering activity;" however, this right was limited by the PSLRA "to bar civil RICO claims based on 'any conduct that would have been actionable as fraud in the purchase or sale of securities.'"  Affco Inv. 2001, L.L.C. v. Proskauer Rose, L.L.P., 625 F.3d 185, 189 (5th Cir. 2010) (quoting 18 U.S.C. § 1964(c)).

The PSRLA was enacted to combat abuse of litigation involving securities, most particularly to address issues such as "nuisance filings, targeting of deep-pocket defendants, [and] vexatious discovery requests." Roland v. Green, 675 F.3d 503, 507 (5th Cir. 2012) (quoting Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 81 (2006)).  The provisions of the PSRLA "limit recoverable damages and attorney's fees [and] . . . mandate imposition of sanctions for frivolous litigation," among many other protections against frivolous litigation. Roland, 675 F.3d at 507 (quoting Merrill Lynch, 547 U.S. at 81).

The PSRLA requires a court, at the conclusion of litigation, to make "specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u–4(c)(1).  Where the Court determines that "a party or attorney violated any requirement of Rule 11(b) . . . the court shall impose sanctions on such party or attorney in accordance with Rule 11."  Id. at § 4(c)(2); see also ATSI Comm., Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 152 (2d Cir. 2009) ("The statute requires district courts . . . to make Rule 11 findings as to each party and each attorney; and . . . requires courts to impose sanctions" (emphasis in original).)

Before finding a Rule 11 violation, "the court shall give such party or attorney notice and an opportunity to respond."  Id.  This requirement is satisfied where a party files a motion seeking review under Federal Rule 11, and the party against whom sanctions are sought has an opportunity to respond.[3]  Brunig v. Clark, 560 F.3d 292, 298, n.22 (5th Cir. 2009).

Where the Court determines that a complaint, responsive pleading, or dispositive motion does not comply with Rule 11(b), the PSLRA carries a

---

[3] Though Brian Zimmerman no longer represents Plaintiffs in this case, this Court finds that he had notice of the sanctions motions.  Barlin filed his motion for sanctions on February 16, 2016 (Dkt. # 716); Gunn and Lahr joined the motion on February 18, 2016 (Dkt. # 717).  Mr. Zimmerman filed an Amended Motion to Withdraw as Attorney on February 20, 2016 (Dkt. # 719), and this motion was not granted until February 23, 2016 (Dkt. # 723).

presumption in favor of "an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action."  15 U.S.C. § 78u–4(c)(3)(A)(i)–(ii).  A party may only rebut the presumption in favor of attorneys' fees by showing that "the award of attorneys' fees and other expenses will impose an unreasonable burden on that party or attorney . . . and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed;" or that the sanctionable violation "was de minimis."  Id. at § 4(c)(3)(B)(i)–(ii).

2. Rule 11 and the PSLRA

While the "PSLRA provides for a presumption in favor of attorneys' fees and costs" for failure to comply with Rule 11(b), such sanctions must be imposed "in accordance with Rule 11."  Brunig, 560 F.3d at 298, n.22 (5th Cir. 2009) (quoting 15 U.S.C. § 78u–3(c)(3)).  "Sanctions may be imposed upon a party's [separate] motion," which "describe[s] the specific conduct that allegedly violates Rule 11(b)."  Marlin v. Moody Nat. Bank, N.A., 533 F.3d 374, 378 (5th Cir. 2008) (quoting Fed. R. Civ. P. 11(c)(3)).  Prior to awarding or denying sanctions, the Court should engage in "a fact-intensive inquiry into the circumstances surrounding the activity alleged to be a violation of Rule 11."  Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 873 (5th Cir. 1988).

Where the Court determines that sanctions are warranted, such "[s]anctions 'may include nonmonetary directives; an order to pay a penalty into court, *or if imposed on motion* and warranted for effective deterrence, an order directing payment to the movant of part or all of the *reasonable attorney's fees and other expenses directly resulting from the violation*.'" <u>Moody</u>, 533 F.3d at 378 (quoting Fed. R. Civ. P. 11(c)(3) (emphasis in <u>Moody</u>)).  Pursuant to Rule 11, "a sanction order 'directing payment to the movant of some or all of the reasonable attorneys' fees' is only available 'if imposed on motion and warranted for effective deterrence.'" <u>Brunig</u>, 560 F.3d at 297 (quoting Fed. R. Civ. P. 11(c)(2)); <u>see also</u> <u>Thomas</u>, 836 F.2d at 879.

Rule 11 contains additional limitations.  For example, a Court cannot impose monetary sanctions against a represented party for violations of Rule 11(b)(2), which prohibits the submission of "a pleading, written motion, or other paper," containing "claims, defenses, and other legal contentions" that are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(c)(5)(A) & 11(b)(2).  However, Rule 11 does not prohibit the imposition of monetary sanctions against individual parties for other violations of Rule 11(b), including for engaging in litigation or encouraging filings before the court for "any

improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. P. 11(b)(1) & 11(c)(5)(A).

    B.  <u>Sanctions Analysis</u>

        1.  <u>Whether Sanctions are Warranted as to Plaintiffs' Attorneys</u>

          a.  <u>Cox Smith Matthews Incorporated</u>

Throughout the course of the litigation in federal court, Plaintiffs have been represented by at least seven sets of attorneys.  This number does not include the attorneys who represented Plaintiffs during their litigation in state court. Plaintiffs' first set of counsel, from Cox Smith Matthews Incorporated ("Cox Smith"), erred as a matter of law in alleging causes of action under RICO arising out of private violations of securities law.  (Dkt. # 1.)  Cox Smith quickly withdrew from the litigation (Dkts. ## 10, 23); at the time the first complaint was raised, it is possible that Cox Smith was simply doing its best to zealously represent clients whom they believed had been wronged.  Their filing, while wrong as a matter of law, is not so egregious as to be sanctionable under the PSRLA, given their prompt withdrawal and the continued assertion of RICO causes of action in amended complaints filed after this withdrawal.  <u>See</u> <u>Roland</u>, 675 F.3d at 507.

          b.  <u>Pulman Cappuccio Pullen & Benson, LLP</u>

The firm Pulman Cappuccio Pullen & Benson, LLP ("Cappuccio") were not counsel of record when Plaintiffs' RICO claims were first raised, and did

not allege RICO claims after the Court issued a verbal warning concerning RICO and ordered the Plaintiffs to re-plead.  (Compare Dkt. # 1 with Dkt. # 63.)  During the remainder of the time in which Plaintiffs were represented by Cappuccio, the Plaintiffs did not attempt to re-raise claims under RICO.  Accordingly, the Court finds that the attorneys from Cappuccio did not engage in the sort of sanctionable conduct the PSRLA was enacted to prohibit.   See Roland, 675 F.3d at 507.

      c.   The Four Intervening Attorneys

No lawyer from any of the four firms representing Plaintiffs after Cappuccio's withdraw represented Plaintiffs for a sufficient period of time, or through such a crucial part of the litigation, as to demonstrate conduct worthy of sanctions under the PSLRA.  Accordingly, none of the attorneys who represented Plaintiffs between June 2012, and June 2013 engaged in the sort of conduct the PSRLA was enacted to prohibit.  See Roland, 675 F.3d at 507.

      d.   Zimmerman Axelrad Meyer Stern & Wise, P.C.

Plaintiffs' seventh lead attorney, Andrew Zimmerman from the firm Zimmerman Axelrad Meyer Stern & Wise, P.C., assumed representation of Plaintiffs after their case had been consolidated with 1:12–CV–503 and 1:12–CV–768.  (Dkts. ## 293, 295.)  Under Zimmerman, Plaintiffs filed the First Consolidated Amended Complaint, which resurrected RICO claims against Barlin, Lahr, and Gunn, while explicitly stating that the Temple Loan, Manor Loan, and

Long Beach Loan constituted securities under the Texas Securities Act.  (Dkt. # 326 ¶¶ 232–237, 291–333.)

Despite Barlin's September 30, 2013 Reply to Plaintiffs' Response to his Motion to Dismiss, which explained the PSLRA's prohibition against bringing RICO claims for private violations of securities laws, Mr. Zimmerman filed the Second Amended Consolidated Complaint, which *again* raised claims against Barlin, Lahr, and Gunn under both RICO and the Texas Securities Act.  (Dkt. # 467 ¶¶ 81, 87–89; 117–158.)  While the inclusion of RICO claims in the First Amended Consolidated Complaint could *possibly* be attributed to a negligent failure to review the history of the case and the details of RICO and the PSLRA, the inclusion of RICO claims in the Second Amended Consolidated Complaint amounts to precisely the sort of conduct that PSLRA was intended to combat.  See Roland, 675 F.3d at 507 (explaining that the PSLRA was "enacted to combat the 'rampant' 'nuisance filings, [and] targeting of deep-pocket defendants . . .'" that occurred in securities litigation prior to the enactment of the PSLRA (quoting Merrill Lynch, 547 U.S. at 81)).

Raising abandoned RICO claims stemming from conduct alleged to be private securities fraud on two separate occasions violates Rule 11(b)(2), prohibiting filings not warranted by existing law, in a context which is very

explicitly subject to Rule 11 review.  Accordingly, Mr. Zimmerman engaged in

sanctionable conduct in the course of his representation of Plaintiffs.

    2.  <u>Whether Sanctions are Warranted as to Plaintiffs</u>

        The true drivers of the sanctionable conduct at issue here, however,

are Plaintiffs.  Plaintiffs perpetuated this litigation for years in state court before

raising the instant suit in federal court.  Plaintiffs have graduate degrees, and

Plaintiff Vodicka is an attorney licensed to practice in the state of Texas.  In 2010,

Plaintiffs were warned *on the record* that they were engaged in conduct that could

be found sanctionable.  (Dkt. # 65 at 14:7–20.)  Throughout the course of this

litigation, Mr. Barlin raised the legal argument, based upon the plain language of

the law, that the PSLRA bars RICO claims arising out of conduct actionable as

securities fraud.  (<u>See e.g.</u>, Dkts. ## 22, 26, 359, 406.)  Although this argument was

clearly laid out at least four times between 2010 and 2013 (<u>see</u> <u>id.</u>), Plaintiffs

permitted their attorneys to file the Second Amended Consolidated Complaint, the

fifth complaint in the case, raising RICO claims for the third time.  (Dkt. # 467.)

        This Court finds it highly suspect that Plaintiffs changed attorneys

four times in a single year before settling on a fifth attorney, who almost

immediately filed a new complaint alleging RICO claims.  By the time the Second

Amended Consolidated Complaint was filed, it should have been quite clear to the

Plaintiffs that they were barred from alleging RICO claims.  Through seven

changes of representation, and the addition and dismissal of many parties to the

litigation, Plaintiffs Aubrey and Vodicka have been the consistent drivers of this

litigation.  Now—over six years since the inception of this litigation in federal

court—Plaintiffs have exhausted any available argument that their repeated RICO

pleadings were made in good faith.

        To be clear, the Plaintiffs, as parties to the lawsuit, may not be

sanctioned for the actual misstatements of the law; accordingly, Plaintiffs are not

responsible for the legal aspect of their pleadings.  However, Plaintiffs' repeated

RICO filings took on the characteristic of harassment that Rule 11(b)(1), which

permits sanctions to be filed against the parties to litigation, intends to eliminate.

Continuing to raise non-viable RICO claims, after being warned by both the Court

and by filings from Defense counsel, that the claims were not viable, needlessly

increased the cost of the litigation.  This conduct unnecessarily delayed trial as

Defendants were required to file Motions to Dismiss the RICO claims on three

separate occasions; the conduct wasted scarce judicial resources in ruling on such

claims.  Accordingly, Plaintiffs engaged in sanctionable conduct under Rule 11 and

the PSLRA.  See Skidmore Energy, Inc. v. KPMG, 455 F.3d 564, 569 (5th Cir.

2006) (finding that parties themselves may be sanctioned for filing or engaging in a

frivolous lawsuit).

3.  Form of Sanctions

Attorneys' fees are an appropriate sanction where they are imposed on motion and are warranted for effective deterrence, and the PSLRA carries a presumption in favor of awarding attorneys' fees as a sanction.  Mr. Barlin specifically moved to recover the attorneys' fees incurred in opposing Plaintiffs' RICO claims, and an award of Mr. Barlin's reasonable attorneys' fees is an appropriate sanction here.  The Court declines to sua sponte issue monetary sanctions on behalf of Gunn and Lahr, as they did not separately request attorneys' fees or timely file a motion for attorneys' fees with the Court.

4.  Apportioning of Sanctions

The Court found above that Plaintiffs were the consistent force behind the repeated RICO pleadings; they must bear a portion of the sanctions in accordance with their responsibility.  Nonetheless, Mr. Zimmerman had a professional responsibility to make ethical and legally correct pleadings before the Court, and bears responsibility for the legal deficiencies in his pleadings, particularly in the Second Consolidated Amended Complaint.  Accordingly, this Court finds that Plaintiffs are 70% liable for the attorneys' fees awarded below, and Mr. Zimmerman is 30% liable for the attorneys' fees awarded below.

II. Calculation of Attorneys' Fees

    A. Applicable Law

        When calculating attorneys' fees awarded as sanctions under Rule 11, a court should begin by using a lodestar analysis.  Worrell v. Houston CanA Academy, 287 Fed. App'x 320, 327 (5th Cir. 2008) (citing La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 323–24 (5th Cir. 1995)).  The lodestar is calculated by "multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work."  Black v. SettlePou, P.C., 732 F.3d 492, 502 (5th Cir. 2013).  A party seeking attorneys' fees has "the burden of showing the reasonableness of the hours billed."  Id.  The party seeking fees may not bill for work that is "unproductive, excessive, or redundant."  Saizan v. Delta Concrete Prod. Co., Inc., 448 F.3d 795, 799 (5th Cir. 2006).

        After calculating the lodestar, the Court may enhance or decrease the award of attorney's fees by considering twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

Black, 732 F.3d at 501 (citing Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).  The lodestar may not be adjusted based upon a factor accounted for during the initial calculation of the lodestar.  Black, 732 F.3d at 501; see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010).

B. Barlin's Attorneys' Fees

Mr. Barlin requests attorneys' fees in the amount of $70,305.00; Mr. Barlin states that this is the amount his counsel billed to respond to and defend against Plaintiffs' various RICO claims in the course of this litigation.  (Dkt. # 744 at 2.)

1. Barlin's Lodestar Calculation

Attorney Daniel Byrne submitted an affidavit stating that he, his partner Dale Roberts, his former associate Ariel Henderson, and his paralegals, primarily Brenda Jones, spent 224.1 hours performing necessary legal services to defend against Plaintiffs' RICO claims before they were finally dismissed. ("Byrne Decl.," Dkt. # 744, Ex. A, ¶ 3.)  Byrne states that these services included researching and analyzing the legal bases for Plaintiffs' claims, participating in client strategy meetings, drafting motions to dismiss, and drafting the instant motion for fees.  (Id.)  These claims are supported by detailed invoices summarizing tasks completed in six-minute increments and noting the individual who completed each task and the individuals' billing rate at that time; these

18

invoices include frequent reductions for work that was devoted to other tasks or that the lawyers deemed excessive.  (Id.; see also Dkt. # 744, Exs. A–1, A–2.)

        The request for fees is further broken down into five distinct pieces, based upon the stage in litigation.  Mr. Byrne and his staff expended 56.5 hours researching the issues contained in Plaintiffs' Original Complaint (Dkt. # 1), filing the first Motion to Dismiss (Dkt. # 22) and the first Motion for Sanctions (Dkt. # 26).  (Byrne Decl. ¶¶ 4–5; "Billing Records," Dkt. # 744, Ex. A-1 at 10.)  Mr. Byrne and his staff expended 62.5 hours responding to the RICO claims asserted in Plaintiffs' First Consolidated Complaint (Dkt. # 326), by researching and filing a Motion to Dismiss (Dkt. # 406), a Reply (Dkt. # 466), and attending a hearing. (Byrne Decl. ¶¶ 4, 6; Billing Records at 11.)  Mr. Byrne and his staff expended 82.5 hours responding to the RICO claims asserted in Plaintiffs' Second Consolidated Complaint (Dkt. # 467), by researching and filing another Motion to Dismiss (Dkt. # 470) and another Reply (Dkt. # 505).  (Byrne Decl. ¶¶ 4, 6; Billing Records at 12–13.)  These efforts ultimately resulted in dismissal of the RICO claims under the PSLRA (Dkt. # 536).  Mr. Byrne and his staff also expended 10.5 hours researching and writing the 2015 Motion to Reconsider (Dkt. # 536) and 8.3 hours pursuing sanctions at the conclusion of the trial.  (Byrne Decl. ¶ 4; Billing Records at 14–15.)

Mr. Byrne, a senior partner at Fritz, Byrne, Head & Fitzpatrick, PLLC, and the lead attorney on Barlin's case, stated in his affidavit that his billing rate has increased from $385 per hour at the inception of this lawsuit to $525 per hour at the present time.  (Byrne Decl. ¶ 11.)  Mr. Byrne states that the other attorneys who worked on the case, partner Dale Roberts and former associate Ariel Henderson, had respective billing rates of $335 and $225 per hour.  (Id.)  Finally, Mr. Byrne states that his primary paralegal services were provided by Brenda Jones, who has 25 years of experience and bills at $150 per hour.  (Id.)

This Court finds that Barlin has met his burden to demonstrate that the hours spent on these motions were reasonable and directly related to the sanctioned conduct.  Black, 732 F.3d at 502.  Further, the Court finds that the rates charged are reasonable in light of the attorneys' experience, and in light of the rates customarily charged by attorneys with comparable experience and expertise in the Western District of Texas.  The Court makes the same findings with regard to the primary paralegal involved in the case.  Accordingly, Barlin's lodestar, prior to adjustment, is $70,305.00.

2.  Whether Lodestar Amount should be Adjusted Pursuant to Johnson Factors

Byrne's affidavit states that the Plaintiffs' continuous repackaging of the RICO claims made this case difficult to litigate.  (Byrne Decl. ¶¶ 8, 9.) However, the Court finds that these difficulties are accurately reflected in the time

20

billed to repeatedly address the issues.  Likewise, Byrne's declaration states he has over thirty years' experience litigating similar cases in federal courts, and his partner Mr. Roberts has over 17 years of experience litigating cases in state and federal court.  (Id. ¶ 15.)  These qualifications are addressed above, where the Court found the attorneys' fees were fairly charged.  Barlin's attorneys were not precluded from taking on other employment, and his attorneys were working on a standard hourly fee agreement; accordingly, no adjustment is warranted for these factors.  (id. ¶¶ 10, 12.)  While Mr. Byrne's affidavit states that the requested fees of $70,305.00 "represented [a] fraction of the much more extensive fees incurred by Barlin herein just to finally dispose of the RICO claims asserted against him," Mr. Barlin does not request fees beyond those outlined here.  (Id. ¶ 13.) Accordingly, no adjustment is warranted under the Johnson factors, and the appropriate attorneys' fees were calculated using the lodestar method.

C. Conclusion

Pursuant to the apportioning of sanctions explained above, Plaintiffs are 70% liable for these fees, and must pay Mr. Barlin $49,213.50 to compensate him for expenses incurred litigating the RICO claims in this case.  Mr. Zimmerman is 30% liable for these fees, and must pay Mr. Barlin $21,091.50 to compensate him for the expenses incurred litigating the RICO claims in this case.

<u>CONCLUSION</u>

For the reasons stated above, the Motion for Sanctions filed by Mr. Barlin (Dkt. # 716) and Joined by Ms. Gunn and Mr. Lahr (Dkt. # 717) is **GRANTED.**  Pursuant to Mr. Barlin's Motion for Attorneys' Fees (Dkt. # 744), this Court **ORDERS** Plaintiffs to compensate Mr. Barlin for attorneys' fees in the amount of $49,213.50; this Court **ORDERS** Mr. Zimmerman to compensate Mr. Barlin for attorneys' fees in the amount of $21,091.50.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, April 18, 2016.

David Alan Ezra
Senior United States Distict Judge